STATE v. MARK HARVEY BOYD AND MOFFITT DOTSON WILBORN.

(Filed 28 April, 1943.)

**1. Criminal Law § 52b—**

　　Upon a motion for nonsuit under C. S., 4643, if there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, the case should be submitted to the jury. But where there is merely a suspicion or conjecture in regard to the charge in the bill of indictment, the motion should be allowed.

**2. Same—**

　　Where a complete defense is established by the State's case, on a criminal indictment, the defendant should be allowed to avail himself of a motion for nonsuit under C. S., 4643.

**3. Burglary and Unlawful Breaking §§ 1e, 7—**

　　Upon indictment under C. S., 4236, the burden is upon the State to show: (1) that the person charged was found having in his possession an implement or implements of housebreaking enumerated in, or which come within the meaning of the statute; and (2) that such possession was without lawful excuse.

**4. Burglary and Unlawful Breaking § 9—**

　　In the trial of an indictment for the possession of implements of housebreaking, where the State's evidence fails to show that any of the implements were for the express purpose of housebreaking and fails to show that any of them were implements enumerated in the statute, C. S., 4236, except perhaps a "bit," and shows that all of the tools or implements, except pistols, were in common use in lawful and ordinary occupations, without any circumstances inferring that the implements were for burglarious purposes, there is no evidence to support a verdict of guilty and motion of nonsuit should have been granted.

APPEAL by defendants from *Dixon, Special Judge,* at October Term, 1942, of FRANKLIN.

Criminal prosecution charging defendants with having in their joint possession, without lawful excuse, certain implements of burglary. C. S., 4236.

The implements, in possession of which defendants are charged to have been found in Franklin County, enumerated in the bill of indict-

ments are: "3 pistols with cartridges for same, bolt clippers, wrecking bar, two big screwdrivers, 2 pairs of gloves and flashlights, blackjack, brace and bit, and pliers or nippers and other implements of dangerous and offensive nature fitted and designed for use in burglary or other housebreaking or for use in burglary with explosives."

Upon the trial in Superior Court evidence offered by the State through the witnesses, State Highway Patrolman M. H. Bynum and one S. T. Denton, tends to show these facts: "Around" twelve o'clock on the night of 16 April, 1942, Patrolman Bynum, acting in his official capacity, and accompanied by Denton, seeing two cars, a Pontiac and a '41 Plymouth, "parked just beyond the monument on Main Street in Louisburg," "came on back down the street and pulled into a service station to wait for them to come by. They came by pretty soon." The patrolman "checked the Pontiac" as it went out Nash Street, and found that it was occupied, and being driven by "a fellow Lassiter." Then the patrolman "went to check the '41 Plymouth." It "had come on down in front of the Big Apple Cafe," and the patrolman "touched the siren and they pulled up along there at the Big Apple." Defendant Wilborn was driving the car, and defendant Boyd was on the right front seat of it. No one else was in the car. This was not over ten minutes after the cars were seen near the monument. When the patrolman came up to the car he asked Wilborn if he objected to his car being searched, to which Wilborn "said he did not," and got out of the car. Whereupon, the patrolman, upon looking in the back of the car, found about a quart of whiskey on the floor back of Wilborn, and, picking up his overcoat, found a pistol in it. The patrolman then arrested Wilborn. At that time the sheriff, having heard the siren, had "walked out there." Then the patrolman had Boyd to get out of the car, and, finding in "the glove compartment" "a flashlight and another pistol and a blackjack" he "put them both under arrest," walked with them to, and put them in jail. Denton, following closely, drove the car to the jail. Up to that time the officer had found only the whiskey, flashlight, two pistols and blackjack, as above stated. But after defendants were locked up, the officers gave "the car a thorough check." The back seat cushion was out. In the car they found these articles, in addition to those above enumerated: "a bolt cutter . . . under the mat . . . on the floor, under boot in the trunk," "a large screwdriver in the trunk"; "wrecking bar . . . in the boot"; "brace and bit"; "one pistol . . . kind of rusty . . . in the boot . . . behind the tire . . . it was loaded"; "a pair of pliers and screwdriver in the boot"; a "straw hat," and a "slicker hat"; two pairs of gloves, one in the glove compartment and the other on the floor in the back; another flashlight "in the seat"; and a "fan belt in the trunk." (Each of these articles was introduced in evidence as exhibits.)

The patrolman testified that when he stopped the defendants, Wilborn said, in the presence and within the hearing of Boyd, that "they had that stuff in there for their protection"; that "they had been stopped with some liquor and had some liquor taken from them"; that "they carried the gun for his own protection"; that, on being asked what they were doing down there, "Wilborn said he had started to Rocky Mount to get a load of liquor"; that, in reply to question of patrolman as to "why he didn't go down 301, it was so much nearer," Wilborn "said he wanted to see a man in Henderson, so he came there"; and that, on being asked who the man was in the other car, Wilborn "said he didn't know him—just happened to run up together and they were both lost," but that "when some officers from Virginia came . down and questioned them about it" "they later told me who he was."

And on cross-examination, in pertinent part, the patrolman continued: "Mr. Boyd said he did not know anything about any of it, said he was just riding . . . They didn't make any effort to get away or make any objection to me searching the car or make any motion that I would construe as an attempt to get away . . . The bolt clippers are what is known as a bolt clipper or cutter, is used for cutting bolts, are part of a mechanic's tools—you can use them to cut most anything—they are used around a garage . . . The brace and bit is a common tool of the carpenter, I would say so . . . The screwdriver you see in every garage and in homes, that is a very common tool . . . I believe the wrecking bar is an ordinary wrecking bar—nothing unusual about it . . . a lot of mechanics have them and use them . . . This little screwdriver is an ordinary screwdriver. . . . You can buy them anywhere, and the same thing about the pliers—they are used around garages and filling stations, and carpenters and electricians use them—everyone should have flashlights. I do not recall that the glove compartment was difficult to open. I mashed the button and . . . it came open very easy . . . Mr. Wilborn told me that he had the pistol for protection—that he had some liquor taken off of him . . . Mr. Boyd said that he was just riding with him as a passenger. Mr. Wilborn said he was a mechanic. That was what he said that he had followed the trade of a mechanic for a long number of years and these were his tools . . . I didn't find among these tools any sawed-off shotguns, or any extra ammunition for the pistols, or any nitroglycerin or any ammonia, any butcher knife, any chisels, drill punches, soap, wire or rope, eye-droppers, dynamite caps or fuses, sledge-hammers, breast drill, drill bits. No, sir, I didn't find any of the articles you have called over." And on re-direct examination the Patrolman said: "I did not find any machine guns . . . 75 MM cannons . . . any shotguns."

The testimony of S. T. Denton, as contained in the record, is, in the main, in corroboration of the patrolman in identifying the articles found in the car.

When the State rested its case, defendants and each of them moved for judgment as of nonsuit. C. S., 4643. The motion was denied and defendants excepted.

Verdict: Guilty as charged in the bill of indictment.

Judgment: As to defendant Moffitt Dotson Wilborn: Confinement in State's Prison at Raleigh for a period of not less than 10 nor more than 12 years. As to defendant Mark Harvey Boyd: Confinement in State's Prison at Raleigh for a period of not less than 7 nor more than 10 years.

Though indicted in the same bill and tried together, defendants separately appeal to the Supreme Court and bring up separate records, identical in all respects except as to judgment, and separately assign error.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*Yarborough & Yarborough for defendants Boyd and Wilborn, appellants.*

WINBORNE, J. Defendants, in the main, stress for error, and properly so, the refusal of the court to grant their motions under C. S., 4643, for judgment of nonsuit.

In considering motion for judgment of nonsuit under C. S., 4643, the general rule as stated in *S. v. Johnson,* 199 N. C., 429, 154 S. E., 730, and in numerous other decisions of this Court, is that "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." But where there is merely a suspicion or conjecture in regard to the charge in the bill of indictment against defendant, the motion for judgment of nonsuit will be allowed. *S. v. Johnson, supra,* and cases cited. See *S. v. Stephenson,* 218 N. C., 258, 10 S. E. (2d), 819; and also *S. v. Vinson,* 63 N. C., 335; *S. v. Sigmon,* 190 N. C., 684, 130 S. E., 854; *S. v. Montague,* 195 N. C., 20, 141 S. E., 285; *S. v. Madden,* 212 N. C., 56, 192 S. E., 859; *S. v. Shelnutt,* 217 N. C., 274, 7 S. E. (2d), 561; *S. v. Todd,* 222 N. C., 346, 23 S. E. (2d), 47; *S. v. Goodman,* 220 N. C., 250, 17 S. E. (2d), 8; *S. v. Penry,* 220. N. C., 248, 17 S. E. (2d), 4.

Also, on a motion for judgment as of nonsuit, under C. S., 4643, the rule is, as stated in *S. v. Fulcher,* 184 N. C., 663, 113 S. E., 769, "that where a complete defense is established by the State's case, a defendant should be allowed to avail himself of such defense." See also *S. v. Hed-*

*den,* 187 N. C., 803, 123 S. E., 65; *S. v. Cohoon,* 206 N. C., 388, 174 S. E., 91; *S. v. Todd, supra.*

In the *Todd case, supra,* applying this principle to an alleged confession of defendant, offered in evidence by the State, *Devin, J.,* said: "While the State by offering this statement was not precluded from showing that the facts were different, no such evidence was offered, and the State's case was made to rest entirely on the statement of the defendant, which the State presented as worthy of belief," citing cases.

Defendants are indicted under that portion of the statute, C. S., 4236, which prescribes that "if any person . . . shall be found having in his possession, without lawful excuse, any pick-lock, key, bit or other implement of housebreaking . . . such person shall be guilty of a felony and punished by fine or imprisonment in the State's Prison, or both in the discretion of the court."

This statute, significant to note, is patterned after the English statute known as the Larceny Act, 1861, 24 and 25 Vict., chapter 96, sec. 58, which is more condensed in expression than a prior English statute, 5 Geo. 4, chapter 83, sec. 4, as quoted in Chitty on Criminal Law (1832), Vol. III, p. 1116, and in pertinent part prescribes that: "Everyone . . . who is found by night having in his possession without lawful excuse (the proof of which excuse lies on such person) any pick-lock, key, crow, jack, bit, or other implement of housebreaking shall be guilty of a misdemeanor." And in this connection it is noted that in the case of *S. v. Dozier,* 73 N. C., 117, at June Term, 1875, a case in which the Court then said that breaking and entering a storehouse, with intent to steal the goods and chattels therein, is not a criminal offense at common law or by statute in this State, *Bynum, J.,* directed attention to the above English statute. Thereafter, a statute was incorporated in the Code of North Carolina, adopted in 1883, sec. 997, which in pertinent part reads: "If any person . . . shall be found by night having in his possession, without lawful excuse, any pick-lock, key, bit or other implement of housebreaking . . . shall be guilty of an infamous crime," etc. Thus it appears that the statute so adopted in this State is in almost the same words as the English statute except that the clause "the proof of which excuse lies on such person," contained in the English statute, was deleted. It is manifest and significant, therefrom, that the General Assembly did not intend that this clause should apply in this State. And the statute, unchanged in wording, was brought forward in the Revisal of 1905, as section 3334, which was amended in 1907 by striking out the words "by night." Public Laws 1907, chapter 822, sec. 1. As so amended it is now the statute under which defendants are indicted. C. S., 4236. In the light of the foregoing it is clear that in this State, under this statute, the gravamen of the offense is the possession of burglar's tools without

lawful excuse, *S. v. Vick,* 213 N. C., 235, 195 S. E., 779, and the burden is on the State to show two things: (1) That the person charged was found having in his possession an implement or implements of house-breaking enumerated in, or which come within the meaning of the stat-ute; and (2) that such possession was without lawful excuse.

In this connection it is noted that the English courts, treating of cases relating to this phase of the statute, seem to hold that although an imple-ment be used in the ordinary affairs of life for lawful purposes, it is to be considered an implement of burglary within the meaning of the Act (1) if it be capable of being used for the purpose of housebreaking, and (2) if, at the time and placed alleged, the person charged had it in possession for that purpose. And, further, although under the English rule when a person is charged with possession of an implement of house-breaking, the burden of proving lawful excuse is on the person so charged, that burden is discharged by the accused if he prove that the alleged implement of housebreaking, capable of being used for that purpose, is a tool used by him in his trade or calling. See 9 Halsbury's Laws of England, Part XIII, on Criminal Law and Procedure, section 1353; and The English and Empire Digest Supplement 1940, Vol. 14, page 108, Nos. 10727, 10729 (a); and Vol. 15, page 960, Part XXXIV, section 13.

Also, in the case of *S. v. Ferrone,* 97 Conn., 258, 116 A., 336, it ap-pears that in the State of Connecticut there is a statute in almost exact wording of the pertinent section of the English Larceny Act, including the clause as to proof of excuse being upon the accused, which is herein-above quoted. In that case the Supreme Court of Errors of Connecti-cut, speaking of, and approving the charge of the trial court, as a clear and accurate construction of the statute, has this to say: " 'An instru-ment of housebreaking,' said the Court, 'may be such from its essential nature, that is, it may be one which is made and designed for the express purpose of housebreaking.' Or, it 'may be one which is such temporarily and for a particular purpose, and whether such or not would depend upon two considerations: "First, is it one that is reasonably adapted for use in housebreaking; and, second, was it at the time intended or actually used for that purpose?" ' "

In the light of the similarity in wording of the English and Connecti-cut statutes to that in this State, C. S., 4236, the construction so made and applied by the English and Connecticut courts, as above indicated, is convincing and appropriate in considering the case in hand.

Therefore, applying these principles to the facts in the present case, we are of opinion that the State has failed to offer evidence sufficient to support a verdict of guilty. The evidence fails to show that any of the articles found in the automobile was an implement made and designed for the express purpose of housebreaking. It fails to show that any of

them were implements enumerated particularly in the statute, except perhaps the "bit." It fails to show that any of the implements were reasonably adapted for use in housebreaking, or that they were the kind of implements used by burglars. On the contrary, the evidence for the State tends to show that each of the articles, including the "bit," so found, except the pistols, and blackjack, is a tool or instrument in common use in lawful occupations, and in the ordinary affairs of life. Moreover, the evidence fails to show facts and circumstances from which it may be inferred that at the time and place in question defendants possessed the implements, singly or in combination, as burglar's tools or for the purpose of housebreaking.

The phrase "without lawful excuse" must be construed in the spirit of the statute. And, even though the possession of the pistols and blackjack be unlawful, and even though the defendants possessed the pistols and blackjack for the purpose of personal protection in the unlawful transportation of intoxicating liquor, in accordance with statement of defendant Wilborn, such possession is not within the meaning of the statute in question.

This case is distinguishable from *S. v. Vick, supra,* where defendant was charged with having in possession certain implements of burglary. Though it is there stated that "the particular section of the statute under which defendant was being tried does not require the proof of any 'intent' or 'unlawful use,'" it must be borne in mind that there "the defendant made no contention that the tools found in the possession of Denton and the other occupants of the car were not implements of housebreaking." Therefore, the rule there stated must be read in the light of the facts in that case. "The law discussed in any opinion is set within the framework of the facts of that particular case," *Barnhill, J.,* in *Light Co. v. Moss,* 220 N. C., 200, 17 S. E. (2d), 10. See also *S. v. Utley, ante,* 39.

For the reasons stated, the judgment of Superior Court against each defendant is

Reversed.