STATE v. JAMES DAVIS AND JAMES E. McCALL.

(Filed 12 December, 1956.)

**1. Burglary and Unlawful Breakings § 11—**

Upon an indictment charging possession, without lawful excuse, of a crowbar, hack saw and automatic pistol, in a prosecution under G.S. 14-55, without charge or evidence of possession of such implements with intent to use them for the purpose of unlawfully and feloniously breaking and entering, the State's evidence of possession, with further testimony that the crowbar and hack saw were ordinary implements used by carpenters and mechanics, and without contention that either is an implement designed for the purpose of housebreaking or that in combination they may not be used for legitimate purposes, is insufficient to be submitted to the jury.

**2. Burglary and Unlawful Breakings § 6—**

In a prosecution under G.S. 14-55, the burden is on the State to prove beyond a reasonable doubt that the possession of the implements specified was "without lawful excuse" within the spirit of the statute, and the

possession of a pistol for personal protection, even though unauthorized, cannot be unlawful possession within the meaning of the statute.

JOHNSON, J., not sitting.

APPEAL by the defendant McCall from *Williams, J.*, February Term 1956 of CUMBERLAND.

The defendants James Davis and James E. McCall were jointly indicted in one bill for larceny of an automobile, and in another charging that they unlawfully, wilfully, and feloniously did have and possess, without lawful excuse, certain implements of housebreaking, to wit, one crowbar, one hack saw, and one automatic pistol, in violation of G.S. 14-55. The cases were consolidated and tried together.

The State's evidence tends to show that the defendants were first seen about 1:30 a.m. on 11 January 1956 in a 1953 Oldsmobile near Dowd's Grocery Store on Water Street in the City of Fayetteville. McCall was driving the car and Davis was beside him. They pulled away from the grocery store and went down the street a short distance and turned around. They got mixed up in traffic and the officer who saw them on Water Street caught up with them on Eastern Boulevard about 15 minutes later. He followed them and stopped them on the Old Wilmington Road, near Campbell Avenue. He checked McCall's driver's license and made inquiry about the ownership of the car; he was told it had been borrowed from a soldier whom Davis knew. The officer saw part of a hack saw sticking out from under the front seat. Davis was requested to get out of the car and the officer found a crowbar under the front seat and a .25 automatic pistol in the glove compartment, with one bullet in it. A pair of pliers was also found in the glove compartment by another officer. The defendants did not have a key to the trunk of the car.

According to the State's evidence, McCall admitted that the pistol and the tools belonged to him. Both defendants told the officers they were plasterers' helpers and used the tools in their work. The evidence is to the effect that the crowbar was the type in general use in construction work and can be bought in any hardware store; that the pliers were the same type most anyone would have in the home and in his automobile, and the hack saw was of the ordinary type one could buy in any hardware store in the State; that they were common tools used by carpenters and mechanics. The evidence is in conflict as to where and when McCall obtained the pistol.

The State's evidence further tends to show that McCall drove the Oldsmobile to his work on Monday. According to the arresting officer, the arrest took place on Tuesday, 12 January 1956, about 1:30 a.m. The indictment gave the date as 11 January 1956. Other evidence of

the State tends to show the arrest was actually made on Tuesday, about 1:30 a.m., on 10 January 1956. (As a matter of fact, 12 January 1956 fell on Thursday following the trip to Durham made by the defendants on the previous Sunday, 8 January 1956.)

The arresting officer testified "I had no information or knowledge that these tools were to be used by these defendants . . . for the purpose of housebreaking or for burglary purposes. It came to my mind that that is probably what they were to be used for. I was suspicious that is what they intended to use them for. I have no proof that they intended to use them in breaking and entering or for working or for anything."

The evidence of the defendants tends to show that Davis, accompanied by Mack Williams, drove the Oldsmobile to the home of McCall on the Sunday prior to the time of their arrest, and requested him to drive the car to Durham. Neither Davis nor Williams had a driver's license. McCall testified that he owned the gun found in the glove compartment of the car; that he carried it with him for protection; that he put the pistol and the pliers in the glove compartment before he left for Durham on Sunday; that he got the tools out of his father's car and put them in the Oldsmobile; that Davis told him he didn't have any tools in the Oldsmobile and he got the tools so they could change a tire if he had a blowout; that "the hack saw was just there with the crowbar and I took them all." He further testified that he had been employed in construction work for about a year by R. B. Benton for whom his father also worked; that he (the defendant) used these tools (referring to those introduced in evidence) in his work. According to the evidence, the defendant did have to change a tire on the Durham trip, and Davis had to get into the trunk through the back seat of the car to get the spare tire because they did not have a key to the trunk.

The defendant McCall admitted on cross-examination that he had been in Juvenile Court on several occasions charged with breaking and entering, but was convicted of such an offense only once; that he was convicted in September 1953 and given a sentence of two years. At the time of the trial below the defendant McCall was 17 years of age.

After the State rested and the defendants rested, the State recalled its first witness, C. D. McLaurin, the arresting officer, who testified that he had to chase the defendants in order to catch up with them at a speed of 75 to 80 miles an hour. The defendant Davis on cross-examination had denied that they had driven 75 miles an hour, and further testified that they had not tried "to give the officers the slip."

At the close of all the evidence, the solicitor announced that the State would take a *nol-pros* as to the defendant McCall on the charge of larceny of the automobile. The defendant Davis was convicted on

both counts, and the defendant McCall was convicted on the count charging him with the possession, without lawful excuse, of certain implements of housebreaking. From the judgment imposed on the defendant McCall, he appeals, assigning error.

*Attorney-General Patton and Assistant Attorney-General Bruton for the State.*

*Henry C. Blair and L. S. High for appellant.*

DENNY, J. The most serious question on this appeal is whether or not we should sustain the defendant's assignments of error based on exceptions duly entered to the refusal of the court below to allow his motion for judgment as of nonsuit interposed at the close of the State's evidence and renewed at the close of all the evidence.

The indictment upon which the defendant was tried and convicted was based on the provisions of G.S. 14-55, which read as follows: "If any person shall be found armed with any dangerous or offensive weapon, with the intent to break or enter a dwelling, or other building whatsoever, and to commit a felony or other infamous crime therein; or shall be found having in his possession, without lawful excuse, any pick-lock, key, bit or other implement of housebreaking; or shall be found in any such building, with intent to commit a felony or other infamous crime therein, such person shall be guilty of a felony and punished by fine or imprisonment in the State's prison, or both, in the discretion of the court."

The State is relying upon the cases of *S. v. Vick*, 213 N.C. 235, 195 S.E. 779, and *S. v. Baldwin*, 226 N.C. 295, 37 S.E. 2d 898, to sustain the verdict below. On the other hand, the defendant is relying upon the case of *S. v. Boyd & Wilborn*, 223 N.C. 79, 25 S.E. 2d 456, for a reversal thereof.

In the case of *S. v. Vick, supra,* the indictment charged that the defendant did unlawfully, wilfully, and feloniously, without lawful excuse, have in his possession certain pick-locks, keys, bits, hammers, crowbars, nitroglycerin, dynamite caps, fuses, drills, soap, shotguns, rifles, axes and other implements for housebreaking contrary to the form of the statute. About 4:00 o'clock on a morning in May 1935, officers of Nash County were searching for one Alfred Denton, an escaped convict. They went to the home of one Bottoms at Gold Valley and waited. They saw an automobile approach Bottoms' home and drove out to meet it with their lights off. When the officers got within 150 or 200 yards of the approaching automobile they turned their lights on. Denton was driving the approaching car and attempted to turn around. In doing so he cut the wheels in a ditch and the car was unable to move. The officers recognized this defendant in the car with Denton. As the

officers approached the car Denton opened fire with a pistol. The defendant picked up a rifle and shot at them from the rear seat. The officers returned the fire. Whereupon Denton and Vick got out of the car and escaped, using their car as a shield, but were apprehended later.

The defendant made no contention that the articles found in the possession of Denton and the defendant were not implements of house-breaking. His defense was bottomed entirely on an alibi. He was convicted and appealed to this Court, which found no error in the trial below. In disposing of the appeal, this Court, speaking through *Barnhill, J.* (later *C. J.*), said: "There are many facts of which the court may take judicial notice, and they should take notice of whatever is, or ought to be, generally known within the limits of their jurisdiction, for justice does not require that courts profess to be more ignorant than the rest of mankind. 15 R.C.L., 1057. It is not unusual for the court to take judicial notice that certain weapons not specifically described in the statute are deadly weapons. They likewise take notice of other like generally known facts. While each of the articles found in the possession of the defendant has its legitimate use, it cannot be said that taken in combination these articles are tools of any legitimate trade or calling. There is no legitimate purpose for which this defendant and his companion could have the combination of articles found in their possession. On the other hand, taken in combination, they are the instruments and tools usually possessed and used by housebreakers."

In *S. v. Baldwin, supra,* the bill of indictment charged the defendant "unlawfully, wilfully and feloniously was found armed with and having in his possession without lawful excuse certain dangerous and offensive weapons, to wit: One 18″ Stillson wrench, one brace #4310, one ½″ drill, one 5⁄16″ drill, one 3⁄16″ drill, one 7⁄32″ drill, five detonating caps, two flashlight batteries Ray O Vac, one burgess super service battery, 2″ cell, one pair brown gloves, one way pack pickle jar containing two sticks of dynamite, four .32 calibre bullets, one drill chuck key, one bottle containing paregoric and other implements of dangerous and offensive nature fitted and designed for use in burglary or other house-breakings or for the use in burglary with explosives *with intent to so use said implements for the purpose of unlawfully and feloniously breaking and entering a dwelling or other building* against the form of the statute in such case made and provided . . ." (Emphasis added.) The second count charged that the defendant had in his possession, without lawful excuse, the articles enumerated in the first count in the bill. At the close of all the evidence, the State took a voluntary nonsuit on the first count which charged the defendant with having such tools and other implements "with intent to so use said implements for the purpose of unlawfully and feloniously breaking and entering a dwelling or other building."

In the case of *S. v. Boyd, supra,* the implements found in the possession of the defendants were enumerated in the bill of indictment as follows: "3 pistols with cartridges for same, bolt clippers, wrecking bar, two big screwdrivers, 2 pairs of gloves and flashlights, blackjack, brace and bit, and pliers or nippers and other implements of dangerous and offensive nature fitted and designed for use in burglary or other housebreaking or for use in burglary with explosives."

The Highway Patrolman who arrested the defendants testified that when he stopped them, Wilborn said, in the presence and hearing of Boyd, that "they had that stuff in there for their protection"; that "they had been stopped with some liquor and had some liquor taken from them." On cross-examination, the Patrolman continued: "The bolt clippers are what is known as a bolt clipper or cutter, is used for cutting bolts, are part of a mechanic's tools—you can use them to cut most anything—they are used around a garage . . . The brace and bit is a common tool of the carpenter, I would say . . . The screwdriver you see in every garage and in homes, that is a very common tool . . . I believe the wrecking bar is an ordinary wrecking bar—nothing unusual about it . . . a lot of mechanics have them and use them . . . This little screwdriver is an ordinary screwdriver . . . You can buy them anywhere, and the same thing about the pliers—they are used around garages and filling stations, and carpenters and electricians use them— everyone should have flashlights. . . . Mr. Wilborn told me that he had the pistol for protection—that he had some liquor taken off of him . . . Mr. Boyd said that he was just riding with him as a passenger. Mr. Wilborn said he was a mechanic. That was what he said that he had followed the trade of a mechanic for a long number of years and these were his tools."

On the present appeal, the defendants are not charged with possessing a single item or tool enumerated in G.S. 14-55. In fact, the indictment enumerates a crowbar, which is an ordinary tool, according to the State's evidence, used by carpenters and mechanics, and an ordinary hack saw that may be purchased in any hardware store in the State. However, if the State had been in a position to indict and prove that these defendants had possession of these tools, "with intent to so use said implements for the purpose of unlawfully and feloniously breaking and entering a dwelling or other building," we would have an entirely different question for consideration and determination. But the State expressly negatives any knowledge or proof of any such intent and purpose on the part of the defendants. Moreover, there is no contention on the part of the State that the crowbar or hack saw is an implement designed for the purpose of housebreaking, or that in combination they may not be used for legitimate purposes.

In the last cited case, *Winborne, J.* (now *C. J.*), pointed out that under the English cases, ". . . when a person is charged with possession of an implement of housebreaking, the burden of proving lawful excuse is on the person so charged, that burden is discharged by the accused if he prove that the alleged implement of housebreaking, capable of being used for that purpose, is a tool used by him in his trade or calling." He further said, "The phrase 'without lawful excuse' must be construed in the spirit of the statute. And, even though the possession of the pistols and blackjack be unlawful, and even though the defendants possessed the pistols and blackjack for the purpose of personal protection in the unlawful transportation of intoxicating liquor, in accordance with statement of defendant Wilborn, such possession is not within the meaning of the statute in question." The judgment of the Superior Court was reversed as to both defendants.

The above cited cases, however, do not relieve the State of the burden of showing beyond a reasonable doubt that the possession of the tools enumerated in the bill of indictment was without lawful excuse.

While the record of this 17-year-old defendant is bad for housebreaking, his intent and purpose in having possession of the enumerated tools and pistol constituted no part of the crime charged in the bill of indictment upon which he was tried. The sole question for the determination of the jury was simply this: Did the defendants have possession of these tools without lawful excuse?

We have reached the conclusion that the State failed to offer sufficient evidence to sustain the verdict from which the defendant McCall appeals. His motion for judgment as of nonsuit should have been sustained.

The judgment of the Superior Court against the defendant James E. McCall is

Reversed.

JOHNSON, J., not sitting.