STATE v. RODNEY CRADDOCK, WILLIAM M. BRYAN, ALLEN E. LUNSDEN AND VERNON JORDAN.

(Filed 13 December, 1967)

**1. Criminal Law § 92—**

Each defendant was charged with possession, without lawful excuse, of implements of housebreaking and burglary discovered in a car, with out-of-state license plates, in which the four were riding. *Held:* Order consolidating the indictments was within the discretion of the trial court, G.S. 15-152, since the State's case rested upon the same set of facts at the same time and place against each defendant.

**2. Criminal Law § 169—**

It will not be held for prejudicial error that an officer was allowed to testify that he stopped the car in which defendants were riding because he was looking for a car of such description in response to a bulletin from the State Bureau of Investigation, incriminating statements in the bulletin not being disclosed to the jury and defendants having brought out the same matter on cross-examination of a State's witness.

**3. Criminal Law § 71—**

Statement of a witness that an object which he saw on the floorboard of defendants' car in plain view was a "burglary lock pick" will not be

STATE *v.* CRADDOCK.

held for prejudicial error, the statement being competent as a shorthand statement of collective fact, and a lock pick being denominated in the statute as a burglary tool. G.S. 14-55.

**4. Searches and Seizures § 1—**

No search warrant is required to render competent in evidence an object seen through the glass window of a car with the aid of a flashlight without opening the door of the car, since in such instance no search is required.

**5. Same—**

A car was stopped by officers of the law who, having ascertained that the driver and his companions were unarmed, had holstered their revolvers, and the driver then voluntarily gave his consent to a search of the automobile and, upon request, took the keys out of the ignition switch and came back to the trunk of the automobile and unlocked it. *Held:* The search was by consent. In this case the court found on the *voir dire* that there was no duress used at the time of the alleged consent.

**6. Same—**

Immunity to unreasonable searches and seizures is a personal privilege which may be waived, and such waiver is not against public policy.

**7. Same—**

Where the driver of an automobile gives voluntary assent to a search of the vehicle by officers, other occupants of the car have no right to object.

**8. Same—**

Articles found under authority of a valid search warrant are competent in evidence.

**9. Same; Constitutional Law § 32—**

It is not required that the driver of a vehicle in giving consent to the search of the vehicle at the request of police officers be represented by counsel.

**10. Burglary and Unlawful Breakings § 10—**

In a prosecution under G.S. 14-55 the burden is upon the State to show that the person charged had in his possession implements of housebreaking within the purview of the statute and that the possession of such implements was without lawful excuse.

**11. Same—Evidence held sufficient for jury on question of defendant's guilt of unlawful possession of burglary tools.**

Evidence that defendants were apprehended driving around in a car with out-of-state license plates at 4:30 a.m., that the automobile contained coins amounting to $484.65, a lockpick with a homemade telephone box key attached to it, two ball peen hammers, assorted wrenches, flashlight, drills and bits, in addition to suitcases filled with articles of clothing, etc., *held* sufficient to sustain a finding that defendants were on a joint enterprise and in joint possession of the objects found in the automobile and to sustain a conviction of each of defendants of possession of implements

of housebreaking and burglary tools, without lawful excuse, in violation of G.S. 14-55.

**12. Criminal Law § 9—**

When two or more persons aid or abet each other in the commission of a crime, all being present, all are principals and equally guilty without regard to any previous confederation or design.

**13. Criminal Law § 31—**

The courts will take judicial notice that many coin telephone instruments are within buildings and some are on the street in telephone booths.

**14. Burglary and Unlawful Breakings § 1—**

There is a "forcible breaking" within the meaning of the statute when a person enters by unlocking or unlatching a door when the entry is with the requisite intent to commit a felony therein.

**15. Criminal Law § 168—**

The court's instruction to the jury will be construed contextually, and objections thereto will not be sustained when the charge, so construed, adequately charges the law on each material aspect of the case arising on the evidence and applies the law fairly to the various factual situations presented by the evidence.

APPEAL by defendants from *Burgwyn, E.J.,* April 1967 Special Session of EDGECOMBE.

Criminal prosecution upon four separate indictments which were consolidated for trial. Each indictment was drawn in identical language, and each indictment charged that each one of the defendants of 14 February 1967 did unlawfully, wilfully, intentionally, and feloniously have in his possession without lawful excuse implements of housebreaking and burglary tools, to wit, a lock pick, two ball peen hammers, one telephone coin box key, assorted wrenches, flashlight, files, and bits, contrary to law, a violation of G.S. 14-55.

When the case was called for trial, each of the four defendants who had been found by the court to be indigent appeared with their court-appointed counsel, J. Phil Carlton, who entered a plea for each of them of not guilty.

The State offered evidence tending to show the following facts: In the early morning hours of 14 February 1967, F. K. Simmons, Jr., and G. W. Griffin, both patrolmen with the Rocky Mount police department, observed a 1959 red and white Ford automobile bearing Florida license No. 2-W-42973 traveling south on Franklin Street directly behind Sears, Roebuck & Company. They had been looking for this particular car in response to a State Bureau of Investigation bulletin concerning it which was issued on 7 February 1967. They followed the automobile on various business and residential streets within the city of Rocky Mount and saw it drive through a

red traffic light at a street intersection. The car they were following was being operated at a speed of 30 to 35 miles per hour. They radioed for help. When this Ford automobile passed Stokes Street, that left them only one avenue of escape which was east on Highway #64. They established a roadblock by radio. The officers turned the patrol car's blue light on and blew the siren, and the Ford automobile stopped about 300 feet inside the city limits on Highway #64. It was then approximately 4:30 a.m. Officers Simmons and Griffin approached the stopped automobile with their revolvers drawn. The two officers whose patrol car was used to block the highway walked to within about two car lengths of the vehicle which had been apprehended. They did not draw their weapons. Officer Simmons instructed the persons inside to step out. Defendant Craddock was driving, defendant Jordan was sitting on the passenger side, and the other two defendants were lying in the back asleep. All four defendants got out of the vehicle. After ascertaining that the defendants were unarmed, the officers holstered their weapons. The two officers made a visual observation of the inside of the car from the outside without opening any doors to the car but simply looked through the windows with a flashlight. The officers saw a lock pick in plain view in the front portion of the car about four inches in front of the seats on top of the transmission housing hump. Attached to the lock pick by a rubber band was a makeshift homemade key to a telephone coin box. Both officers also visually observed in the automobile a coin sack and coin wrappers on the floorboard on the passenger side. The officers asked Craddock if he had anything of an illegal nature in the car, and Craddock stated that he did not believe he did. They asked Craddock if he had any objection to their looking in the trunk, and he stated that he had none whatsoever. They asked him to open the trunk of the automobile. Craddock went to his automobile, took out the ignition key, came back to the trunk of the automobile, and unlocked the trunk. They made no thorough or extensive search of the car at that time. They saw assorted tools in the trunk — hammers, chisels, a portable grinder with a small narrow emery wheel on it, and things of that nature. They also removed from the trunk of the automobile a small file. They found several hundred coin wrappers in the automobile. Some were loose, and the majority of them were in boxes. They also saw in the trunk of the automobile three or four suitcases and several assorted items of clothing.

At 11 a.m., some six and one-half hours later, in order to accommodate the working schedule of the clerk of the court, they obtained from the clerk of the court a search warrant in proper form to make a thorough search of the automobile, and the items in the trunk were removed. These included chisels, ball peen hammers,

screw drivers, files, a portable grinder, and the suitcases. On the back seat of the automobile there was a brown paper bag which contained quarters, dimes, and nickels. In the glove compartment was a shaving kit which contained rolls of coins and miscellaneous coins consisting of nickels, dimes, and quarters. The lock pick that the officers saw through the window in the automobile was introduced in evidence and marked State's Exhibit No. 1.

J. P. Thomas, a witness for the State, is a special agent with the State Bureau of Investigation. He has been with the State Bureau of Investigation about 14 years and a police officer for 19 years. In his experience he has had occasion to come in contact with and has received training relating to the device known as a lock pick. He attended a three-day school in Raleigh conducted by Jim Bradshaw pertaining to locking devices, combination and key locks. That was immediately after he had returned from attending a course in locks. He testified:

> "State's Exhibit No. 1 consists of one piece which is a leverage bar for inserting into a keyhole to keep tension on the inner cylinder which turns inside the outside cylinder. This particular item here is a probe used for reaching inside a key lock pushing the pin tumblers up so that they can all be secured in an up position. They are pushed down by springs. This little gadget operates each one separately until they can be lined up and something such as this article right here, the leverage bar, slipped under the pins all simultaneously. At that time with the tension on the lock when it turns will open.
>
> "I saw State's Exhibit No. 1 some time ago at the police department in Rocky Mount. This lock pick will open a cylinder type lock, such as you normally find on doors, filing cabinets, where you have an inner cylinder which turns inside of an outer cylinder. There are four or five, various numbered pin tumblers inside locks of that type, and any one pin will secure the lock. To release it, one must get all of the pins up at one time, simultaneously, keep them in an up position and keep leverage on the inner cylinder as it turns to the left or the right, whichever the case may be. I have seen these lock picks sold on the public market in other states but not in this state."

F. K. Simmons, Jr., testified on redirect examination as follows:

> "The key which is on the lock pick was on the lock pick when I first found it. This is the very same rubber band that was wrapped around it. We broke it when we removed the key. This is a makeshift key to a telephone coin box, a homemade job."

He testified on recross-examination as follows:

> "The part of the telephone we opened with the key was the little latch. You slip the coin box out from the outside cover to get to the little box that contains the coins. I could not reach in there and pick up the coins after I used the key but I could remove the box that had the coins in it. This appears to be a makeshift homemade job."

R. E. Dixon is public telephone manager for the Carolina Telephone Company in Rocky Mount. He identified the key attached to the lock pick, which is State's Exhibit No. 1, as a coin telephone instrument which is used for opening a pay station.

Horace Winstead is a detective with the Rocky Mount police department who has been with that department 15 years. About 3 p.m. on 14 February 1967 he took each defendant to his office and read to him his rights as follows: "You have the right to remain silent. Anything you say can be used against you in court. You have a right to the presence of a lawyer. If you cannot afford a lawyer one will be appointed for you before any questioning, if you so desire. If at any time before or during questioning you wish to remain silent you may do so." He asked each defendant if he would read over the statement that he read to them and sign it. Each de-defendant refused to sign it, saying they were not signing "a damn thing." He explained to them that it was no confession but was merely to show that he had advised them of their rights, and each one still said he did not intend to sign anything. He then asked them if they would talk with him, and they said they would talk with him but they would not sign any paper. He testified as follows:

> "I asked them if they would talk with me and they said yes, they would talk with me but they would not sign any paper. I said all right, that I would like to talk with them and they said what did I want to talk about. I said I would like to talk with them about this $484.65 in silver that they had in their possession and where it came from. They said they were coin collectors and that it was not any of my business where it came from. I asked them to tell me one bank they had been to and they said they did not remember which bank they got it from. I asked them their occupation and they said they were coin collectors. I asked them what route they took in coming to Rocky Mount and they said they did not know how they got to Rocky Mount; that all they knew was they were in Rocky Mount, had not done anything, and got put in jail. I asked them if they were in Rocky Mount on the 7th day of that month. I

asked them the purpose of these two little articles here, State's Exhibit 1, and they told me they did not know anything about them, had never seen them before. They said if they were in their car they had never seen them. I advised the defendants that State's Exhibit 1 was lying in the foot of their car in plain view and they said they still had never seen it. All of them had several suitcases. In going through the suitcase of each defendant while he was present we found this key in a suitcase belonging to Craddock. There were three or four hanger type clothes containers that were stuffed full of clothes, some clean and some dirty, and three regular suitcases, average size, all of them packed full of clothes. I talked with all of them about where the money came from and I did not get any answers. I did not examine the red tool box."

Defendants offered no evidence.

The jury found by their verdict that each defendant was guilty. From separate prison sentences imposed upon each defendant, each defendant appealed to the Supreme Court.

*Attorney General T. W. Bruton, Assistant Attorney General William W. Melvin, and Staff Attorney T. Buie Costen for the State.*
*J. Phil Carlton and Marvin V. Horton for defendant appellants.*

PARKER, C.J. The trial court having found that all the defendants were indigent entered an order allowing them to perfect their appeal *in forma pauperis* and appointed J. Phil Carlton, their trial attorney, and Marvin V. Horton to represent them in this Court. The court's order further directed that the County of Edgecombe should furnish defendants with a transcript of the evidence in the case and the charge of the court and that the record and the briefs of defendants should be mimeographed according to the rules of this Court under the direction of its Clerk at the expense of Edgecombe County, thus giving these indigent defendants the opportunity to perfect their appeal and present their case to this Court in the same fashion as if they were each fully solvent.

Defendants assign as error the order by the court consolidating the four indictments for trial. The four defendants were charged in four separate indictments with participating in the same crime as principals. The State relied upon the same set of facts at the same time and place as against each defendant. The consolidation was proper and was authorized by the provisions of G.S. 15-152. It prevented four trials involving the same facts. *S. v. Spencer*, 239 N.C. 604, 80 S.E. 2d 670. Under the provisions of G.S. 15-152, the order

of consolidation, upon motion of the solicitor, was within the discretionary power of the court, and no abuse of discretion appears. *S. v. Truelove,* 224 N.C. 147, 29 S.E. 2d 460. This assignment of error is overruled. It would seem that the solicitor for the State would have drawn one indictment charging all four defendants with the crime. The drawing of four separate indictments served no purpose, except to increase the court costs.

F. K. Simmons, Jr., a Rocky Mount police officer, after first testifying that at 4:30 a.m. on 14 February 1967 in the city limits of Rocky Mount he saw a 1959 red and white Ford automobile bearing Florida license No. 2-W-42973, was asked: "How long had you been looking for the car?" Over the objection and exception of defendants, he was permitted to answer: "Since the 7th of February when the State Bureau of Investigation bulletin came out." Police officer G. W. Griffin, who was with officer Simmons, was asked: "For what reason did you pay particular attention to this 1959 Ford?" Over defendants' objection and exception he replied: "Prior knowledge from a bulletin we had received from other law enforcement authorities —" Whereupon the solicitor asked him: "Do you recall which law enforcement authority you had received information from?" Officer Griffin replied: "Yes, sir, the North Carolina State Bureau of Investigation." Defendants assign the admission of this testimony as error. The statements were in connection with the automobile and not the defendants. Nothing in the witnesses' reply referred to defendants, or any one of them. The reply of the witnesses does not support defendants' contention that it was designed to influence the minds of the jurors against the defendants as being notorious criminals before the relevant facts of the case were presented. Even if we concede that this evidence was irrelevant, we think it was not so prejudicial as to cause a new trial. This assignment of error is overruled. If statements in the bulletin were prejudicial, the defendants brought it out on cross-examination of the witness Horace Winstead, who testified on cross-examination:

> "When I came to work at 3 o'clock I was told by Captain Godwin that these four subjects listed on the police bulletin out of the State Bureau of Investigation office in Raleigh, Rodney Craddock, Michael Bryan, Vernon Jordan and Allen Lunsden, were in jail, that they had been put in jail by the third shift, and that he would like for me to talk with them. As result of that, I took each one out and talked with him."

Damaging testimony as to what the State Bureau of Investigation bulletin contained appears on page 33 of the record, but this was introduced in evidence after the jury had been excused on motion of

defendants. It was not heard by the jury and could not have been prejudicial.

F. K. Simmons, Jr., testified that when the defendants got out of the car, the officers saw a lock pick in plain view in the front portion of the car about four inches in front of the seats on top of the transmission housing hump, and attached to the lock pick by a rubber band was a makeshift homemade key. The witness was asked: "Just tell what it is." Over defendants' objection and exception, he was permitted to answer: "This is a burglary lock pick. I am not a locksmith and therefore I couldn't go into details on how it is used but I do recognize it as a burglary lock pick." Defendants assign the admission of this evidence as error for two reasons: (1) This permitted the witness to give an opinion on one of the very questions the jury had to decide, and (2) the instrument which the witness was describing was certainly not a complicated mechanism and the jury was as well qualified as the witness to form and express an opinion with regard to it. G.S. 14-55, the statute under which the indictments were drawn, prohibits the possession, without lawful excuse, of any picklock, and it would seem that the statute contemplates it as being a burglary tool when it is in the possession of someone without lawful excuse. It would seem that a "lock pick" and a "picklock" are the same thing. Webster's New International Dictionary, Second Edition, defines "picklock" as follows: "(1) One who picks locks, specif. a thief; also, a tool for picking locks." "Justice does not require that courts profess to be more ignorant than the rest of mankind." *S. v. Vick,* 213 N.C. 235, 195 S.E. 779. The testimony of the witness that this is a burglary lock pick is competent as a "shorthand" statement of collective fact. 2 Strong's N.C. Index 2d, Criminal Law, § 71. This assignment of error is overruled.

Defendants assign as error the admission in evidence of all the objects found in the automobile and in the refusal of the court to suppress the evidence of the witnesses who testified as to what was found in the automobile. These assignments of error are overruled. (1) The picklock and the key attached to it, the coins, and what the officers saw through the windows of the car by the aid of a flashlight without opening the doors of the car to search were competent in evidence. This is said in 47 Am. Jur., Searches and Seizures, § 20, p. 516:

> "Where no search is required, the constitutional guaranty is not applicable. The guaranty applies only in those instances where the seizure is assisted by a necessary search. It does not prohibit a seizure without a warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand."

This is quoted with approval in *S. v. Giles,* 254 N.C. 499, 119 S.E. 2d 394, and in *S. v. Kinley,* 270 N.C. 296, 154 S.E. 2d 95. (2) Defendant Craddock, who was driving the automobile, freely and voluntarily gave his consent to the search of the automobile. The State's evidence shows that after ascertaining that the defendants were unarmed the two officers who stopped the automobile put their pistols away. The two officers who had blocked the road with their automobile did not take their pistols in their hands. The officers asked Craddock to open the trunk of the automobile. Craddock went to his automobile, took out the ignition key, came back to the trunk of the automobile, and unlocked the trunk. On the *voir dire* the court found as a fact that there was no duress used at the time of the alleged consent of the owner and operator of the car that it could be searched by one or more of the officers, and that the consent was freely made upon request. This finding of fact of the trial judge is amply supported by the testimony. No search warrant is required where the owner or person in charge voluntarily and freely consents to the search. Where the owner or person in charge of an automobile voluntarily consents to the search, he cannot be heard to complain that his constitutional and statutory rights were violated. *S. v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *S. v. Coffey,* 255 N.C. 293, 121 S.E. 2d 736; *S. v. McPeak,* 243 N.C. 243, 90 S.E. 2d 501. The immunity to unreasonable searches and seizures is a privilege personal to those whose rights thereunder have been infringed. They alone may invoke it against illegal searches and seizures. The rights of the defendants other than Craddock were not invaded by the search of Craddock's car, and they had no legal right to object thereto. *S. v. McPeak, supra.* No rule or public policy forbids a person to waive his right to be free from unreasonable searches and seizures. *Manchester Press Club v. State Liquor Commission,* 89 N.H. 442, 200 A. 407, 116 A.L.R. 1093. (3) The officers made a cursory examination of this car and six and one-half hours later obtained a valid search warrant to search this particular Ford automobile bearing the Florida license aforesaid for burglary tools or instruments, screw drivers, chisels, or other tools used to commit a felony. What was found under the authority of this valid search warrant was thoroughly competent in evidence.

Defendants assign as error the admission of the testimony of police officers Simmons and Griffin that the defendant consented to the search of the automobile he was driving. They contend that the admission of this evidence is prohibited by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974. The *Miranda* case refers to custodial interrogation by law enforcement officers after a person has been taken into custody or otherwise deprived of his

freedom of action in any significant way. Merely asking a defendant for consent to search the automobile is not prohibited by the *Miranda* decision. This assignment of error is overruled.

Defendants introduced no evidence. At the close of the State's evidence defendants made a motion for judgment of compulsory nonsuit which the court denied. This denial is assigned as error. The indictments were drawn under the provisions of this part of G.S. 14-55: "If any person . . . shall be found having in his possession, without lawful excuse, any pick-lock, key, bit or other implement of housebreaking; . . . such person shall be guilty of a felony and punished by fine or imprisonment in the State's prison, or both, in the discretion of the court."

In a prosecution under the provisions of G.S. 14-55 quoted above, the burden is on the State to show two things: "(1) That the person charged was found having in his possession an implement or implements of housebreaking enumerated in, or which come within the meaning of the statute; and (2) that such possession was without lawful excuse." *S. v. Boyd*, 223 N.C. 79, 25 S.E. 2d 456; *S. v. Morgan*, 268 N.C. 214, 150 S.E. 2d 377. Obviously, the picklock and the homemade key attached to the picklock found in the automobile may be used for lawful purposes, but it is also manifest that they can be used for purposes of burglary. Considering the State's evidence in the light most favorable to it and giving the State the benefit of every reasonable inference to be drawn therefrom, it would permit a jury to find the following facts: (1) That at about 4:30 a.m. on 14 February 1967 all four defendants were riding together in a Ford automobile bearing a Florida license tag on the streets of the city of Rocky Mount; (2) that in this automobile was a picklock with a homemade key attached to it and a quantity of coins amounting to $484.65, and in the trunk of the car quite a number of clothes and wearing apparel; (3) that the picklock in the possession of the defendants was an implement of housebreaking enumerated in, or which comes within the meaning of the statute, G.S. 14-55; (4) that the coins were scattered inside the car and in the trunk, and that the defendants, after having properly been warned of their constitutional rights, said they were coin collectors and that it was not any business of the police where the coins came from; (5) that they said they did not remember what bank they got the coins from; (6) that they did not know how they got to Rocky Mount, that all they knew was that they were in Rocky Mount; (7) that in the automobile were three or four hanger-type clothes containers stuffed full of clothes, some clean and some dirty, and three regular suitcases, all of them packed full of clothes; and (8) that all the defendants were on a joint enterprise and in joint possession of the objects found in the

automobile; that the defendants unlawfully, wilfully, intentionally, and feloniously did have in their possession, without lawful excuse, implements of housebreaking and burglary tools, to wit, a lock pick, two ball peen hammers, assorted wrenches, flashlight, files and bits; and that all were principals and all were equally guilty.

It is thoroughly established law in this State that, without regard to any previous confederation or design, when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty. *S. v. Taft,* 256 N.C. 441, 124 S.E. 2d 169. The court properly submitted the case to the jury.

We take judicial notice of the fact that many coin telephone instruments are within buildings and some are on the street. "There is a sufficient breaking at common law, and a 'forcible breaking' within the meaning of a statute, where a person enters by unlocking or unlatching a door. . . ." 12 C.J.S., Burglary, § 3(b), p. 670. To the same effect, 2 Wharton's Criminal Law and Procedure (Anderson Ed. 1957), § 413. Of course, the unlocking and entry of a building must be with the requisite intent to commit a felony therein.

We have carefully examined all the other assignments of error to the admission of evidence and all are overruled.

We have carefully examined all assignments of error to the charge. Reading and construing the charge contextually as a whole, it adequately charges the law on every material aspect of the case arising on the evidence and applies the law fairly to the various factual situations presented by the evidence; *e.g.,* Judge Burgwyn charged the jury as follows:

> "The defendants contend, Ladies and Gentlemen of the jury, that if you should find that they had the pick lock in there for the sole purpose of picking the telephone booths along the highways or the streets which they were traveling, and not for the purpose of burglarizing any of the homes, that you should find them not guilty.
>
> "It is a question of fact for you to determine whether or not they had the pick lock in there, and if they did have it in there, for what purpose they had it, whether they had it to rob telephone booths or homes. If you are satisfied beyond a reasonable doubt that they had it in there for the purpose of robbing homes or places of business, picking the locks and entering the homes, you will find them guilty. If you have a reasonable doubt about it, you will find them not guilty."

While certain expressions in the charge detached from its context may be the subject of criticism, yet reading the charge contextually

it leaves no reasonable cause to believe that the jury was misled or misinformed. 4 Strong's N. C. Index, p. 336. All assignments of error to the charge are overruled.

In the trial below we find

No error.