State v. Bagley

―――――――――――

STATE OF NORTH CAROLINA v. LARRY BAGLEY

No. 7914SC398

(Filed 2 October 1979)

1. **Criminal Law § 101— statement by bailiff to juror—no prejudice to defendant**
     The trial court did not err in denying defendant's motion for mistrial made after learning that the bailiff had engaged in conversation with one of the jurors during the trial of this matter, since there was nothing whatsoever in the conversation that was even remotely related to the case, and the only reference to any case made by the bailiff was to one on which he sat as a juror twenty-five years earlier and in which he felt that he had been instrumental in bringing about an acquittal of defendant in that matter.

**2. Burglary and Unlawful Breakings § 5.12— breaking and entering business—possession of store breaking tools—sufficiency of evidence**

In a prosecution for felonious breaking and entering and felonious possession of implements of store breaking, evidence was sufficient to be submitted to the jury where it tended to show that a sheriff's deputy went to a store in response to a silent burglar alarm; he saw two black males emerge from the rear of the building; when they did not stop at his verbal command, he fired his shotgun, at which point both individuals dropped to the ground; one of the individuals (later identified as defendant) had entered some bushes and was, for a short period of time, out of the deputy's view, but he emerged from the bushes on the deputy's command; in close physical proximity to the individuals the deputy found several bottles of prescription drugs, two pairs of gloves, as well as a crowbar at the rear of the building; a tire tool was found inside the building at its rear; and the owners of the store and other store employees testified that defendant and his companion had not been given permission to be in the store.

**3. Burglary and Unlawful Breakings § 10.3— tire tool as implement of store breaking**

In a prosecution for felonious possession of implements of store breaking pursuant to G.S. 14-55, the trial court did not err in permitting the jury to conclude that a tire tool was an implement of store breaking.

APPEAL by defendant from *Battle, Judge.* Judgment entered 1 February 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 30 August 1979.

Defendant was tried, upon indictments proper in form, for felonious breaking and entering and felonious possession of implements of store breaking. He was convicted by the jury on both counts and received concurrent sentences of not less than four nor more than ten years' imprisonment on each count. From judgment on the verdict defendant appeals, assigning error.

*Attorney General Edmisten, by Assistant Attorney General Joan H. Byers, for the State.*

*Bryant, Bryant, Drew and Crill, by Lee A. Patterson, II, for the defendant.*

MARTIN (Robert M.), Judge.

[1] Defendant first assigns as error the failure of the trial court to declare a mistrial after learning that the bailiff had engaged in conversation with one of the jurors during the trial of this matter. The trial court held a *voir dire* hearing and determined that

State v. Bagley

nothing whatsoever in the conversation was even remotely related to the instant case or any other current case on the trial calendar for Durham County. The only reference to a case made by the bailiff was to one on which he sat as a juror twenty-five years earlier, and in which he, the bailiff, felt he had been instrumental in bringing about an acquittal of the defendant in that matter. If any impact could have been made upon the juror by the bailiff, it would necessarily have been favorable to the defendant. Under these facts, it was not error for the trial court to overrule defendant's motion for a mistrial. Mistrials are not granted lightly, and the granting thereof will ordinarily rest in the sound discretion of the trial judge. *See State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977). Defendant has failed to show any abuse of discretion and the cases dealing with this issue do not support his contentions. *See, e.g., State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968); *State v. Clemmons*, 35 N.C. App. 192, 241 S.E. 2d 116 (1978). Although we do not countenance with approval *any* unauthorized conversation between court officials and jurors, we do not find it necessary to order the expense and inconvenience of a new trial where the content of the conversation was as innocuous and nonprejudicial to defendant as the record before us indicates. *See, e.g., Lewis v. Fountain*, 168 N.C. 277, 84 S.E. 278 (1915). Defendant's assignment of error is overruled.

We also overrule defendant's assignment of error to the trial court's failure to question the jurors in regard to this conversation. All of the evidence concerning the conversation showed that the conversation was decidedly nonprejudicial in character, and we do not see what purpose would have been achieved by extending the inquiry further. We note that the trial court properly instructed the jury as to what evidence they could and should consider, and conclude that any error here would be harmless.

[2] Defendant next assigns as error the failure of the trial court to allow his motion for nonsuit at the close of State's evidence. We find this assignment of error to be wholly without merit. On a motion for nonsuit, the evidence for the State is to be viewed by the trial court as true, with any conflicts or discrepancies in the evidence being resolved, for the purposes of the motion, in favor of the State. *See State v. Cooper*, 286 N.C. 549, 213 S.E. 2d 305 (1975). Evidence for the State tended to show that a deputy of the Durham County Sheriff's Department (having gone with another

deputy to the store which had been broken and entered in response to a silent burglar alarm) saw two black males emerge from the rear of the building in question. When they did not stop at his verbal command, he fired his shotgun, at which point both individuals dropped to the ground. One of the individuals (later identified as defendant) had entered some bushes and was, for a short period of time, out of the deputy's view, but he emerged from the bushes on the deputy's command. In close physical proximity to the individuals, the deputy found several bottles of prescription drugs, two pairs of gloves, as well as a crowbar at the rear of the building. A tire tool was found inside the building at its rear. The owners of the store and other store employees testified that defendant and his companion had not been given permission to be in the store. We find this evidence to be abundantly sufficient to survive defendant's motion for nonsuit. *See State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968). The assignment of error is overruled.

[3]   Defendant further assigns as error the trial court's submission to the jury of the issue regarding possession of implements of housebreaking, an offense under N.C. Gen. Stats. § 14-55. State's evidence, as noted above, tended to show that both a tire tool and a crowbar were found in close proximity to defendant and his partner at the scene of the offense. Defendant contends, on the authority of *State v. Garrett*, 263 N.C. 773, 140 S.E. 2d 315 (1965) and *State v. Godwin*, 3 N.C. App. 55, 164 S.E. 2d 86 (1968) (*Godwin* following the rationale and holding of *Garrett*), that it was error for the trial court to permit the jury to consider whether a tire tool could be an implement of house- (or store-) breaking.

The decided cases display a less than uniform degree of consistency in approach to the question what is or is not an "other implement of housebreaking" within the purview of N.C. Gen. Stats. § 14-55. The decisions, at least on first consideration, would appear to be oriented towards reaching particular results in particular cases, rather than in refining and applying a uniform rule of law. *See generally* Annot. 33 A.L.R. 3rd 798. It is by this *ad hoc* procedure that we came to the result whereby a crowbar, which is a tool well-suited for prying and forcing, is susceptible to adjudication as being an implement of housebreaking as a matter of law (even though many crafts and trades legitimately employ

this tool for lawful purposes) (*see, e.g., State v. Morgan,* 268 N.C. 214, 150 S.E. 2d 377 (1966)) and yet a tire tool, which is equally well-suited for prying and forcing (a conclusion which we may safely reach by observing the frequency with which both implements figure prominently in breaking cases), is held not to be an implement of housebreaking by *Garrett* and its sole offspring.

The analysis employed by the Supreme Court in *Garrett,* whereby it concluded that a tire tool was not an "other implement of housebreaking" within the contemplation of N.C. Gen. Stats. § 14-55, appears to be essentially quantitative: virtually every motorist possesses a tire tool, and, indeed, should possess one for safe travel upon the highways. Therefore, because the opportunities for lawful possession vastly outweigh numerically the instances where the tire tool may be used for some felonious purpose, it is concluded that the Legislature, under the *ejusdem generis* rule, did not intend to include the tire tool in the catch-all phrase "other implement of housebreaking."

A different type of analysis was foreshadowed in *State v. Vick,* 213 N.C. 235, 195 S.E. 779 (1935) and is employed in the line of decisions beginning with *State v. Boyd,* 223 N.C. 79, 25 S.E. 2d 456 (1943) and continuing with *State v. Baldwin,* 226 N.C. 295, 37 S.E. 2d 898 (1946), *State v. Morgan,* 268 N.C. 214, 150 S.E. 2d 377 (1966), and *State v. Lovelace,* 272 N.C. 496, 158 S.E. 2d 624 (1967). In *Boyd,* Justice Winborne, writing for the Court, discussed at length and in detail the history of the statute (now N.C. Gen. Stats. § 14-55, then C.S. 4236) and its interpretation both in England and in this country. He relied upon a Connecticut case, *State v. Ferrone,* 97 Conn. 258, 116 A. 336 (1922), in formulating a qualitative analytic approach to the question. Two classes of implements were described: those which were designed specifically for housebreaking (and presumably including those specifically enumerated in the statute) and those which become implements of housebreaking "temporarily and for a particular purpose." In determining whether a particular tool fits into the second class, a two-prong test was employed: (1) was the tool in question reasonably adapted for use in housebreaking; and, (2) was the tool in question at the time intended or actually used for that purpose.

The advantages of this second approach to classifying objects as implements of housebreaking are obvious. It enables the trial

court to view the total circumstances surrounding the possession and use of an object to make a determination about it. It also avoids having to engage in counting exercises to see if legitimate uses for a tool outnumber potentially criminal uses. By considering the manner in which an object *can* be used in conjunction with considering how that same object actually *was* used (or was intended for use), a greater uniformity of decisions may be reached in this area than is possible under any *ad hoc* approach. The sureness of the equal application of the law is enhanced, and all persons who might be affected by the application or administration of this statute can receive meaningful notice of what constitutes an offense under its provisions.

The analysis employed in *Boyd* had yielded determinations that, in a proper case with supporting evidence, the following implements may be found to be "other implements of housebreaking" within the contemplation of N.C. Gen. Stats. § 14-55: a crowbar (Morgan); screwdrivers (*Morgan, Lovelace*); ball peen hammers and wrenches (*State v. Craddock*, 272 N.C. 160, 158 S.E. 2d 25 (1967)). All of these tools have commonly occurring legitimate uses in ordinary occupations. Nonetheless, any of them may be used (and they are well adapted for use) in housebreaking under particular circumstances, and, if the cases are to be accorded credibility, have been so used. We fail to see what distinguishes a tire tool from these other implements. We are disinclined to indulge in metaphysical speculation as to what intrinsic qualities or properties inhere to a tire tool which would make it immune to the analysis applied to the other enumerated implements by virtue of *Boyd* as listed above. Accordingly, we decline to follow *Garrett* and *Godwin* as we find them to be inconsistent with the preponderant and better-reasoned authority. For the reasons stated, we find no error in the trial court's permitting the jury to conclude that a tire tool was an implement of storebreaking. There is abundant evidence to show that the tire tool was used in the breaking. No explanation appears of record which would justify the presence of the tire tool inside the store after the breaking. No suggestion appears of record that any automobile tire was in need of or receiving repair on the premises in question at the time defendant and his companion were apprehended. The jury was properly instructed on the principles of actual and contructive possession, and no reason has been argued

which would require disturbing their verdict. Even were we to follow *Garrett,* it must be noted that there was ample evidence that defendant, either himself or acting in concert with his partner, actually or constructively possessed the crowbar which was also used in the breaking and which was found outside the store in close physical proximity to defendant. Under the principles enunciated in *Lovelace* concerning common criminal purpose (a case with facts bearing marked similarity to those of the instant case) defendant would be still guilty of the offense of possessing an "other implement of housebreaking" in violation of N.C. Gen. Stats. § 14-55 on the authority of *Morgan.* Defendant's assignments of error on these points are overruled.

We conclude that defendant has had a fair trial, free from prejudicial error.

No error.

Judges WEBB and ERWIN concur.