STATE OF NORTH CAROLINA v. ALBERT R. SHORE AND
BOBBY RAY KENNEDY

Nos. 7021SC531
7021SC533

(Filed 16 December 1970)

1. Burglary and Unlawful Breakings § 9— unlawful possession of implements of housebreaking — burden of proof

In a prosecution for unlawful possession of implements of housebreaking, the burden is on the State to show (1) that the person charged was found having in his possession an implement of housebreaking and (2) that such possession was without lawful excuse. G.S. 14-55.

2. Burglary and Unlawful Breakings § 10— bolt-cutter as "implement of housebreaking" — sufficiency of State's evidence

The State's evidence was sufficient to permit the jury to find that a bolt-cutter was possessed by defendants as an "implement of housebreaking," where it tended to show that a short time before being found in defendants' possession one defendant had used the bolt-cutter to break into a cigarette machine while the other defendant waited for him in a car.

3. Burglary and Unlawful Breakings § 10— bolt-cutter as burglary tool — possession "without lawful excuse" — sufficiency of State's evidence

The State's evidence was sufficient to permit the jury to find that defendants' possession of a bolt-cutter at 4:30 a.m. was "without lawful excuse," where it tended to show that a short time before being found in defendants' possession the bolt-cutter had been used by one defendant to break into a cigarette machine while the other defendant waited for him in a car, notwithstanding one of the defendants presented evidence that he possessed the tools found at the scene of arrest for use in his work as a carpenter's helper.

APPEAL by defendants from *Armstrong, J.*, 24 April 1970 Criminal Session, FORSYTH Superior Court.

Defendants Kennedy and Shore were each indicted for unlawfully, wilfully and feloniously having in his possession, without lawful excuse, implements of housebreaking, to wit, one

screwdriver, one heavy duty HKP bolt cable cutter, one left-hand glove, and one pair of pliers, in violation of G.S. 14-55. They pleaded not guilty.

Pertinent testimony presented by the State is summarized as follows: On 10 March 1970 at approximately 4:30 a.m. police officers on patrol in the City of Winston-Salem observed a green 1954 Buick drive slowly along South Main Street in a southerly direction, turn around, come back up Main, and then stop next to a Duke Power Company tower located on the east side of Main Street. Officer Bolt stated that the lights of the vehicle remained on for 4 or 5 minutes after stopping and thereafter it backed into a driveway (the FCX parking lot) beside the tower and its lights went out. Bolt notified other police vehicles in the area of the suspicious vehicle. In response to the notification, Officer Kapps proceeded to the vicinity of the suspicious auto and parked his patrol car. Kapps testified that some 15 or 20 minutes before he had checked the Gant Service Station that was located on South Main Street and that a cigarette and drink machine in front of the station were in order. Kapps positioned himself so that he could observe the area with field glasses, and after several minutes he noticed a man crossing from the east side of Main Street near where Bolt testified that the Buick had been parked. Kapps was not able to identify the man as either of the defendants because it was still dark. The man headed in the general direction of several gas stations, including a Spur and a Gant Station. Several minutes later Kapps observed a man running back from the direction in which the first man had gone. Kapps testified that he saw a long object in the man's hand as he ran, and that the runner headed toward the FCX parking lot. The lights of a vehicle parked there were then turned on, and the car started down Main Street in a southerly direction; thereupon Officer Kapps began to follow the vehicle which he then identified as a green 1954 Buick. He drove up close behind the Buick and with his lights shining into the vehicle was able to see two men in the front seat; the man on the right was holding a bolt-cutter and was taking a glove off his left hand. Kapps attempted to stop the vehicle, and the man on the right side of the car jumped from it and ran as it slowed to a stop. The driver of the vehicle, Kennedy, was arrested by Kapps while Officer Tuttle apprehended Shore, the man who had fled on foot. Kapps found a pair of pliers on Kennedy's person and a long screwdriver on the front seat of the Buick; he also found a left-hand glove and six packs of cigarettes in the car. Before Officer

Tuttle caught defendant Shore, he saw Shore throw the bolt-cutter down; Shore had the right-hand glove when apprehended. Tuttle found $22.95 in quarters, dimes, and nickels on Shore's person at the scene, and later at the County Jail $4.00 in change was found in Shore's sock. Officer Kapps stated that after the defendants were taken into custody he returned to the Gant Station and observed that the metal bar which went across the front of the cigarette machine had been clipped and that the lock on the machine had been pried.

At the trial Kennedy's wife testified that her husband did work as a carpenter's helper, and that he owned tools which he used in his work. She testified that among his tools were a screwdriver, pliers, ruler, and a hammer, but that she had never seen the gloves, long screwdriver or bolt-cutter which were exhibits for the State.

Motions for judgment of nonsuit were timely made and denied by the court. From a verdict of guilty and judgment entered thereon defendants appealed.

*Attorney General Robert Morgan and Assistant Attorneys General Charles M. Hensey and Claude W. Harris for the State.*

*John M. Harrington for defendant appellant Albert Ray Shore and J. Clifton Harper for defendant appellant Bobby Ray Kennedy.*

BRITT, Judge.

The statute under which defendants were prosecuted is G.S. 14-55 which provides:

If any person shall be found armed with any dangerous or offensive weapon, with the intent to break or enter a dwelling, or other building whatsoever, and to commit any felony or larceny therein; or shall be found having in his possession, without lawful excuse, any picklock, key, bit, or other implement of housebreaking; or shall be found in any such building, with intent to commit any felony or larceny therein, such person shall be guilty of a felony and punished by fine or imprisonment in the State's prison, or both, in the discretion of the Court.

[1] This statute defines three separate offenses, *State v. Morgan*, 268 N.C. 214, 219, 150 S.E. 2d 377 (1966), and the one we are concerned with here is the second defined offense which has

to do with the possession of an implement of housebreaking without lawful excuse. *State v. Boyd,* 223 N.C. 79, 83, 25 S.E. 2d 456 (1943). The burden is on the State to show (1) that the person charged was found having in his possession an implement or implements of housebreaking and (2) that such possession was without lawful excuse. *State v. Styles,* 3 N.C. App. 204, 164 S.E. 2d 412 (1968).

The State's evidence, viewed in the light most favorable to it, tends to show that defendants parked their vehicle on South Main Street in Winston-Salem at 4:30 a.m.; that defendant Shore left the vehicle and proceeded to the Gant Service Station and there with the aid of a bolt-cutter broke into a cigarette machine and stole an amount of change after which he returned to the vehicle; and shortly thereafter the two defendants were apprehended with the bolt-cutter and other implements set forth in the indictment, together with some $26.95 in change, in their possession.

[2] Defendants contend the State's evidence was insufficient to permit a jury to find that one or more of the tools in their possession were "implements of housebreaking." It is conceded that the items possessed are not specifically named in G.S. 14-55, so if their possession without lawful excuse is proscribed at all it is under the general language of the statute. *State v. Morgan, supra.* The State's evidence tending to show that at 4:30 a.m. the bolt-cutter was in the possession of defendants while they were in close proximity to the machine that was broken into; that the metal band around the cigarette machine had been cut by some implement; and that shortly before an officer had observed that the band was intact, was sufficient to show that the bolt-cutter, although a tool that is normally lawful to possess, was capable of and was being used as an "implement of housebreaking" within the meaning of the statute. We do not hold here that a cigarette machine is a "structure designed to secure property" so as to fall within the meaning of G.S. 14-54, but we believe that the possession of the implement with intent to burglarize and not the character of the object (be it a house or vending machine) of the burglary brings the act within the condemnation of the statute. It is reasonable to perceive that a burglar with a bolt-cutter, on the prowl to steal that which belongs to others, would clip a padlock and enter and steal from a service station building as readily as he would clip a metal band

securing a vending machine and steal its contents. We hold that the State's evidence was sufficient to allow the jury to find that the bolt-cutter was possessed under the circumstances shown in this case, as an "implement of housebreaking."

[3] The second element of the State's case has to do with proving that the tools in question were possessed "without lawful excuse." Defendant Kennedy introduced evidence that indicated he had a colorably lawful reason to possess the tools that were found at the scene of the arrest; however, the State introduced strong evidence indicating that the possession was unlawful. The State's evidence tended to show that defendants were on South Main Street at 4:30 in the morning and had the intention of stealing; that the bolt-cutter was being held by one of the defendants immediately before and during the course of his arrest and no explanation was given as to what it had been used for that night. A more proper place for the bolt-cutter if possessed for lawful purposes, or at least one that was less suspicious, would have been in the trunk of the car. The evidence as to whether the possession was lawful, being in conflict, was for the jury to decide and a nonsuit would have been improper, 2 N. C. Index 2d, Criminal Law, Sec. 104. The conduct of the defendants and the circumstances under which they were in possession of the bolt-cutter raised the inference that its possession was for an unlawful purpose.

We hold that the defendants had a fair trial free from prejudicial error and the sentences imposed were within the limits prescribed by statute.

No error.

Judges CAMPBELL and HEDRICK concur.