STATE OF NORTH CAROLINA v. RAYMOND GIBSON

No. 7227SC372

(Filed 24 May 1972)

1. Burglary and Unlawful Breakings § 10— connection of defendant with burglary tools — sufficiency of evidence

   The State's evidence sufficiently connected defendant with a canvas bag containing various tools to support his conviction of unlawful possession of burglary tools where it tended to show that defendant was a passenger in an automobile driven by defendant's admitted companion behind a closed business establishment at 4:00 a.m., and that defendant was sitting in the back seat either on top of or in front of the canvas bag containing the tools.

2. Burglary and Unlawful Breakings § 10— implements of housebreaking — combination of tools

   Although crowbars, sledge hammers, flashlights, adjustable wrenches, screwdrivers, punch-pry bars, Kent tools, wrecking bars, braces and bits, goggles, cutting torches, and gloves have honest and legitimate uses in themselves, evidence that such tools were found at 4:00 a.m. in an automobile which had been driven behind a closed business establishment was sufficient to support a finding that they were possessed without lawful excuse as implements of housebreaking.

APPEAL by defendant from *Martin (Harry), Judge,* 3 January 1972 Session of Superior Court held in GASTON County.

Defendant was charged in a bill of indictment with the felony of possession, without lawful excuse, of implements of housebreaking.

The State's evidence tended to show the following: At approximately four o'clock in the morning of 14 October 1971, Deputy Sheriff Leroy Howard observed a light colored vehicle drive behind the Winn-Dixie Store near Belmont. As Deputy Howard continued surveillance of the area, he observed the vehicle come back into the road from behind the Winn-Dixie Store. Deputy Howard called the Belmont police by radio and proceeded to follow the vehicle. One Belmont police car pulled in behind Deputy Howard and another approached from the opposite direction. Deputy Howard turned on his car's blue light and the light colored vehicle that he was following pulled to the right side of the road and stopped. Deputy Howard and the two Belmont police officers walked to the light colored vehicle.

The light colored vehicle was a 1963 Thunderbird. A subject by the name of Braswell was driving; a subject by the name of Brooks was in the right front seat; and defendant Gibson was alone in the back seat. During the course of the arrest of Brooks for carrying a concealed weapon, defendant was asked to get out of the car. As defendant got out a canvas bag was observed on the back seat, either behind or under where defendant had been seated. Two crowbars or wrecking bars were observed sticking out the end of the bag. The canvas bag was removed from the 1963 Thunderbird and found to contain the following: 2 crowbars, 1 ten pound sledge hammer, 1 flashlight, 1 adjustable wrench, 1 screwdriver, 1 combination punch-pry bar, 1 Kent tool, 1 T-50 wrecking bar, 1 brace, 1 no. 12 bit, 1 pair protective goggles, 2 cutting torch heads, and 3 pair of brown gloves.

Defendant offered the testimony of Claude Braswell, Jr., the driver of the 1963 Thunderbird. His testimony tended to show the following: Defendant and Braswell had been in Atlanta, Georgia, for the purpose of getting narcotics and were hitchhiking back from Atlanta on Interstate 85. Near Blacksburg, South Carolina, they caught a ride on 13 October 1971 with Brooks in the 1963 Thunderbird. Later Brooks asked Braswell to drive and they were taking Brooks home when the officers stopped them. Neither Braswell nor defendant was aware of the canvas bag or its contents until after they were taken to the Police Station. Both Braswell and defendant were "on narcotics" at the time they were arrested.

The jury found defendant guilty as charged, and he has appealed.

*Attorney General Morgan, by Assistant Attorney General Magner, for the State.*

*Frank Battley Rankin for defendant.*

BROCK, Judge.

[1] Defendant argues that nonsuit should have been entered because there was no direct connection shown between him and the canvas bag and its contents. It would be a strain upon rational thought to say that defendant sat in the back seat either on top of or in front of the bag of tools listed above without knowing they were there. But, be that as it may, the conduct

of defendant's admitted companion in driving around behind the Winn-Dixie Store at 4:00 a.m. is sufficient, when added to the existence of the tools, to carry the case to the jury on the question of possession.

[2] Defendant also argues that nonsuit should have been entered because the State failed to offer any evidence that the tools found in the vehicle were tools commonly used for breaking and entering. While crowbars, sledge hammers, flashlights, adjustable wrenches, screwdrivers, punch-pry bars, Kent tools, wrecking bars, braces and bits, goggles, cutting torches, and gloves have honest and legitimate uses in themselves; nevertheless, when found in combination, without explanation, at 4:00 a.m. in an automobile which has been driven behind a closed business establishment, it is ample to sustain a conviction of possession, without lawful excuse, of implements of housebreaking. See, *State v. Nichols,* 268 N.C. 152, 150 S.E. 2d 21; *State v. Shore,* 10 N.C. App. 75, 178 S.E. 2d 22.

We have carefully examined defendant's remaining assignments of error and find them to be without merit. Defendant had a fair trial, free from prejudicial error.

No error.

Chief Judge MALLARD and Judge CAMPBELL concur.