STATE OF NORTH CAROLINA v. LEE THOMAS CARELOCK

No. 54

(Filed 11 November 1977)

1. **Burglary and Unlawful Breakings § 5.8— breaking—doors of house closed—sufficiency of evidence**

    The trial court did not err in denying defendant's motion to dismiss the charge of first degree burglary on the ground that no "breaking" had been shown since the victim testified that all outside doors to her home were closed, and opening a closed but unlocked door is a sufficient breaking.

2. **Criminal Law § 114.2— jury instruction on defendant's statement—no expression of opinion**

    The language of the trial court characterizing defendant's statement to an SBI agent as a "confession" was not an expression of opinion in violation of G.S. 1-180.

3. **Burglary and Unlawful Breakings § 6.4— breaking or entering—jury instructions not prejudicial**

    In a prosecution for first degree burglary, the trial court's slip of the tongue when it said "breaking or entering" instead of "breaking and entering" was harmless, and the jury was not misled.

4. **Criminal Law §§ 116, 168.8— defendant's failure to testify—correct and incorrect instructions—new trial**

    Where the trial court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part; therefore, defendant who did not take the stand is entitled to a new trial where the court gave both incorrect and correct instructions with respect to defendant's failure to testify.

5. **Criminal Law § 116— defendant's failure to testify—no instruction absent request**

    Absent a special request the judge is not required to instruct the jury that a defendant's failure to testify creates no presumption against him.

DEFENDANT appeals from judgments of *Collier, J.,* 14 February 1977 Criminal Session, ANSON Superior Court.

In separate bills of indictment defendant was charged with first degree burglary and first degree rape. The cases were consolidated for trial.

Myrtle Lovelace, fifty-nine-year-old widow, testified that she lived alone one mile south of Wadesboro. On the night of 11 September 1976 she went to bed around 9 p.m. Both outside doors to her home were closed. She awakened about 3 a.m. and noticed

a black boy standing at the foot of her bed going through her pocketbook. She sat up in bed, screamed, and asked, "What are you doing here?" The intruder immediately ran to her, put a butcher knife to her throat, and threatened to kill her if she screamed. He then forced her to unbutton her gown and lie on the bed while he raped her, all the while keeping the knife near her neck. He told her he intended to kill her before he left.

Mrs. Lovelace further testified that defendant remained in her home about one hour. He became very nervous when cars were passing. Finally, the man who delivered the morning newspapers entered the street below the Lovelace house and his car lights shone on the window. When defendant went to the window to look out, Mrs. Lovelace jerked the back door open and escaped. She told the paper man what had happened and then went into her neighbor's house to call the police. Defendant ran from the house following her and was later apprehended nearby.

Officer Feagin arrived at the Lovelace home about 5:15 a.m. On the way there he saw defendant "trotting across the road," apprehended him and carried him back to the Lovelace home. Mrs. Lovelace then and there positively identified defendant as the man who raped her. Officer Feagin found a butcher knife (State's Exhibit 11) on the lawn a short distance from the kitchen door and Mrs. Lovelace identified it as the knife defendant had used when he raped her.

SBI Agent Richardson testified that he gave defendant the full *Miranda* warnings in the presence of Officer Marvin Clark, following which defendant said he understood his rights and signed a written waiver. Defendant then made a statement to the officers that he went to Mrs. Lovelace's place intending to "get something off her car." When he arrived he saw the back door standing open so he entered the house looking for a pocketbook to get money. When Mrs. Lovelace discovered him, he showed her the knife and told her to be quiet or he would kill her. He then told her to unsnap her gown, which she did, and he had sexual relations with her by force and against her will. Sometime later he heard the paper man arrive, went to the window to peep out, and Mrs. Lovelace ran out the back door. He ran behind her, threw the knife at her and thought he had struck her in the back. Defendant stated he was seventeen years of age.

Defendant offered no evidence.

The jury convicted defendant of first degree burglary and first degree rape. A life sentence was imposed in each case and defendant appealed assigning errors.

*Rufus L. Edmisten, Attorney General; David S. Crump, Assistant Attorney General, for the State of North Carolina.*

*Henry T. Drake, attorney for defendant appellant.*

HUSKINS, Justice.

[1]   We overrule defendant's first assignment of error based on denial of his motion to dismiss the charge of first degree burglary because no "breaking" had been shown. Opening a closed but unlocked door is a sufficient breaking. *State v. Wilson*, 289 N.C. 531, 223 S.E. 2d 311 (1976); *State v. Craddock*, 272 N.C. 160, 158 S.E. 2d 25 (1967); *State v. Tippett*, 270 N.C. 588, 155 S.E. 2d 269 (1967). Mrs. Lovelace testified that all outside doors were closed. In his incriminating statement offered in evidence by the State, defendant said the back door was open. The conflict in the State's evidence presented a question for the jury.

[2]   Likewise, defendant's second assignment is overruled. The language of the trial court, characterizing defendant's statement to SBI Agent Richardson as a "confession," was not an expression of opinion in violation of G.S. 1-180. *State v. Bailey*, 280 N.C. 264, 185 S.E. 2d 683 (1972).

[3]   The court's charge delineating the elements of first degree burglary, while not technically correct in every isolated portion, when construed contextually as a whole and in the same connected way in which it was given, is free from prejudicial error. The isolated slip of the tongue when the court said "breaking *or* entering" instead of "breaking *and* entering" was harmless. *State v. Gatling*, 275 N.C. 625, 170 S.E. 2d 593 (1969). The jury was not misled. Defendant's third assignment is overruled.

[4]   Defendant's fourth assignment is based on the following excerpt from the charge:

> "The defendant by his silence denies each and every allegation of these charged [sic] against him and every element of the crimes charged against him. That is what some by his silence tends to show and what it does show, if anything, is also for you to say and determine."

Defendant argues that the quoted portion of the charge permits the jury to roam at large in its consideration of defendant's failure to testify and interpret such failure either favorably or unfavorably, for or against him, as the jury may determine. This argument is sound.

Examination of the entire charge reveals that the court had previously instructed the jury as follows:

"The defendant in this case has not testified. The law of North Carolina gives him this privilege. This same law also assures him his decision not to testify creates no presumption against him. Therefore, his silence is not to influence your decision in any way."

Our decisions uniformly establish that where, as here, the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part. *State v. Cousins*, 289 N.C. 540, 223 S.E. 2d 338 (1976); *State v. Ingland*, 278 N.C. 42, 178 S.E. 2d 577 (1971); *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971). "A new trial must also result when ambiguity in the charge affords an opportunity for the jury to act upon a permissible but incorrect interpretation." *State v. Parrish*, 275 N.C. 69, 165 S.E. 2d 230 (1969). The jury cannot be expected to know which of two conflicting instructions is correct. *State v. Holloway*, 262 N.C. 753, 138 S.E. 2d 629 (1964).

[5] For the error noted in the charge there must be a new trial and it is so ordered. It is appropriate to note, in passing, that absent a special request the judge is not required to instruct the jury that a defendant's failure to testify creates no presumption against him. *State v. Rankin*, 282 N.C. 572, 193 S.E. 2d 740 (1973). "Ordinarily, it would seem better to give no instruction concerning a defendant's failure to testify unless such an instruction is requested by defendant." *State v. Barbour, supra*. Absent a request such an instruction is said by some jurisdictions to accentuate the significance of a defendant's silence and thus impinge upon his unfettered right to testify or not at his option. *See* Annot., 18 A.L.R. 3d 1335, and cases cited. *Accord State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Baxter*, 285 N.C. 735, 208 S.E. 2d 696 (1974); *State v. Bryant*, 283 N.C. 227, 195 S.E. 2d 509 (1973).

The remaining assignments are not discussed since the matters giving rise to them are unlikely to recur at the next trial.

New trial.