STATE OF NORTH CAROLINA v. AUBREY LEE WHITT

No. 126

(Filed 1 February 1980)

1. **Criminal Law § 75.1; Arrest and Bail § 3.1— warrantless arrest—probable cause—admissibility of confession**

   There was no merit to defendant's contention in a murder prosecution that his confession was secured as the result of an illegal, warrantless arrest, since officers had probable cause to believe that defendant had committed the felony of larceny of an automobile belonging to one of the murder victims and the officers therefore could properly arrest defendant.

2. **Criminal Law § 75.11— waiver of constitutional rights—confession voluntary**

   Evidence was sufficient to support the trial court's conclusion that defendant voluntarily, knowingly and understandingly waived his rights to remain silent and to counsel where the evidence tended to show that defendant was not under the influence of intoxicants; though he had no formal education, he could write his name; officers made no promises or offers to induce defendant to make a statement; defendant's *Miranda* rights were explained to him; and defendant thereafter made incriminating statements.

APPEAL by defendant from order of *Barbee, J.,* entered 18 April 1979, and from judgment of *Davis, J.,* entered at the 30 April 1979 Criminal Session of GUILFORD Superior Court, High Point Division.

By bills of indictment proper in form, defendant was charged with the murders of Joyce Tuggle Voss and Mary Jane Bassett. The offenses allegedly occurred on 15 December 1978.

Prior to trial defendant filed a motion asking that evidence relating to certain statements allegedly made by him on 16 December 1978, and a gun seized as a result of those statements, be suppressed. Following a hearing, Judge Barbee made findings of fact and conclusions of law as hereinafter stated and denied the motion to suppress. Defendant duly excepted to the denial of his motion.

When the cases came on for trial before Judge Davis, defendant tendered pleas of guilty to second-degree murder in both cases, expressly admitting that he was guilty of the two murders with which he was charged. After determining that the pleas were freely, voluntarily and understandingly made, the court, with the consent of the state, accepted the pleas.

Judge Davis consolidated the cases for purpose of judgment and entered judgment that defendant be imprisoned for a minimum and maximum term of 100 years. Defendant appealed pursuant to G.S. 15A-979(b).

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Assistant Public Defender Frederick G. Lind for defendant-appellant.*

BRITT, Justice.

Defendant's sole contention is that the trial court erred in denying his motion to suppress all evidence relating to statements made by him to police officers and the gun seized by the officers. The contention has no merit; consequently, we affirm the order and judgment from which defendant appeals.

[1] Defendant argues first that the challenged evidence was secured as the result of "an illegal, warrantless seizure of the defendant made without probable cause". Admittedly, defendant was arrested or taken into custody without a warrant, therefore, the legality of his arrest is governed by G.S. 15A-401(b) which, at times pertinent to this appeal, provided:

(b) Arrest by Officer Without a Warrant.—

    (1) Offense in Presence of Officer.—An officer may arrest without a warrant any person who the officer has probable cause to believe has committed a criminal offense in the officer's presence.

    (2) Offense Out of Presence of Officer.—*An officer may arrest without a warrant any person who the officer has probable cause to believe:*

    a. *Has committed a felony;* or

    b. Has committed a misdemeanor, and:

        1. Will not be apprehended unless immediately arrested, or

        2. May cause physical injury to himself or others, or damage to property unless immediately arrested. (Emphasis added.)

Our inquiry under the evidence in this case is whether the officers, at the time they arrested defendant, had probable cause to believe that he had committed a felony. On this question, Judge Barbee made findings of fact summarized in pertinent part as follows:

(1) On 15 December 1978, Joyce Tuggle Voss and Mary Jane Bassett were allegedly killed at a residence in High Point, N.C. Voss suffered a gunshot wound and Bassett was severely beaten about her head. On 16 December 1978 Detectives D. O. DeBerry and Frank Wilkins of the Guilford County Sheriff's Department were assigned to investigate the alleged killings. They arrived at the residence where the victims were and observed their bodies. Their investigation disclosed that defendant was residing at the residence but was not there at the time of the investigation. The officers also learned that a vehicle owned and operated by Mrs. Voss was missing. They caused an all-points bulletin for the defendant and for the vehicle to be broadcast.

(2) Later in the day on 16 December 1978 Detective DeBerry received a report that the vehicle and defendant had been seen in nearby Chatham County in the Town of Siler City, N.C.; immediately thereafter Detectives DeBerry and Wilkins drove to Siler City, arriving there between 8:15 and 8:30 p.m. Detectives DeBerry and Wilkins, accompanied by Chatham County and Siler City law enforcement officers, went to a house on East Fourth Street in Siler City where defendant was thought to be present. The car in question was parked outside the house.

(3) Detectives DeBerry and Wilkins and a lieutenant of the Siler City Police Department entered the house to talk with defendant who was sitting in a back room. The house was owned by Mr. Durham who was also present.

(4) After entering the house, the Siler City lieutenant asked defendant, "Jack, how are you doing?" Jack is the nickname of defendant. Defendant stood up and the lieutenant then frisked him for a weapon. In addition to other statements, defendant said, "Don't worry, I'm not going to give you any problems". The officers did not have an arrest warrant at the time. Detective DeBerry then told defendant that "we need to go out to the car" after which he and defendant walked outside to the car. He did

not place defendant under arrest and did not handcuff him. The officers did not have any guns drawn at any time.

(5) Defendant got into the rear seat of one of the police cars. Detective DeBerry then read him his *Miranda* rights, and defendant, at about 8:55 p.m., signed a printed form indicating that he understood his rights. After advising defendant of his rights, Detective DeBerry told defendant that they needed to know what happened. Defendant responded, "Well, you know what happened". The officer answered, "Well, yes, but I need for you to just kind of fill me in a little bit and let me know about the way things took place."

(6) Defendant then made incriminating statements summarized as follows: "It happened yesterday between one and two o'clock." Defendant was then living in the house. He had been dating Joyce for six or seven months. They had begun to have problems in their relationship, and "he had had it. . . ." He hit Mary with a mattock handle and shot Joyce once with a shotgun.

(7) When asked about the shotgun, defendant told the officers that he had sold it to some friends. Shortly thereafter, defendant was taken to the Chatham County Sheriff's Department where Sheriff Elkins got into the backseat with defendant. Sheriff Elkins knew defendant and spoke a few words to him. Thereafter, defendant directed the officers to a residence outside of Siler City where he said he had sold the gun. Upon arriving at that residence, Sheriff Elkins and Detective Wilkins entered the house. Shortly thereafter, they came out with the shotgun.

(8) Detectives DeBerry and Wilkins then transported defendant to the Guilford County Sheriff's Department in Greensboro, arriving there at around 11:25 p.m. When they arrived, the officers again advised defendant of his constitutional rights, and defendant informed the officers that he understood each of the rights they had read to him. At 11:40 p.m., defendant signed a waiver of his rights and made other incriminating statements to the officers.

Judge Barbee concluded that at the time the police officers saw defendant at the house in Siler City, they had probable cause to believe that he had stolen the vehicle belonging to Mrs. Voss;

therefore, they had probable cause to arrest him, and any detainment of defendant by the officers was lawful.

In *State v. Streeter*, 283 N.C. 203, 207, 195 S.E. 2d 502 (1973), Justice Huskins, speaking for this court, said:

> An arrest is constitutionally valid when the officers have probable cause to make it. Whether probable cause exists depends upon "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 13 L.Ed. 2d 142, 85 S.Ct. 223 (1964).

We hold that the facts found by Judge Barbee are sufficient to support his conclusion of law that the officers had probable cause to believe that defendant had committed the felony of larceny of an automobile. The evidence presented at the hearing was sufficient to support the findings of fact.

Defendant's insistence that this case is controlled by *Dunaway v. New York*, --- U.S. ---, 60 L.Ed. 2d 824, 99 S.Ct. 2248 (1979), is not persuasive. The key holding in *Dunaway* is that custodial questioning on less than probable cause for arrest is. violative of the Fourth Amendment. In the case at hand, there *was* probable cause for defendant's arrest.

[2] Defendant also argues that the challenged statements were illegally obtained in that he did not voluntarily, knowingly and understandingly waive his rights to remain silent and to counsel, rights guaranteed to him by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and that the seizure of the gun resulted from the illegally obtained statements.

Following the hearing on defendant's motion to suppress, the court, in addition to finding facts and making conclusions of law as summarized above, found and concluded that immediately after defendant was taken into custody at Durham's home, Detective DeBerry advised him of each of his *Miranda* rights; that defendant then made incriminating statements; that several hours later defendant was transported to the Sheriff's Department in Greensboro where he again was advised of each of his *Miranda* rights; that he again made incriminating statements; that on said

date defendant was 50 years of age and while he had no formal education, he could write his name; that he was not under the influence of intoxicants; that at no time did any law enforcement officer make any promises or offers of hope or reward to induce defendant to make a statement; that at no time was defendant threatened or was there any violence or suggestion of violence to induce defendant to make a statement; and that any statements made by defendant were made voluntarily and not pursuant to any threats or promises of hope or reward. The court concluded that "under the totality and circumstances in this case" any statement made by defendant to the officers on 16 December 1978 was made voluntarily, knowingly, intelligently, understandingly and independently; that defendant fully understood his constitutional rights to remain silent and his right to counsel; and that defendant freely, knowingly and voluntarily waived each of his constitutional rights and made incriminating statements to the police officers.

The findings and conclusions of the trial judge are fully supported by the evidence in the record. That being true, they are conclusive on appeal. *State v. Jones*, 293 N.C. 413, 238 S.E. 2d 482 (1977); *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975), death sentence vacated, 428 U.S. 908, 49 L.Ed. 2d 1213, 96 S.Ct. 3215 (1976).

Since the arrest of defendant was lawful, and he made his statements to police voluntarily after being fully advised of and waiving his constitutional rights, evidence relating to the shotgun was also admissible.

The order and judgment appealed from are

Affirmed.