STATE OF NORTH CAROLINA v. HERMAN K. SIMPSON

No. 20

(Filed 8 July 1981)

**1. Criminal Law § 75.1— confession at police administration building—no illegal arrest—inculpatory statement admissible**

There was no merit to defendant's contention that, when law enforcement officers requested that he accompany them to the police administration building, he was "arrested" without a warrant and without probable cause and that any statements he had made subsequent to this "arrest" were the fruits of and tainted by the illegal arrest and were therefore inadmissible, since defendant voluntarily agreed to accompany law enforcement officers to the police administration building; officers did not frisk or handcuff defendant at that time; defendant was not subjected to any physical contact with the officers until after he made an incriminating statement; during his interrogation the officers honored each of his requests for food, water, or use of bathroom facilities; he was not treated as though he was incarcerated; defendant was not under arrest until an officer appeared with a warrant for his arrest, and he would have been allowed to leave, had he asked to do so, at any time prior to the officer's appearance with the arrest warrant; when the officer appeared with a warrant for defendant's arrest, there was sufficient evidence before the law enforcement officers to constitute probable cause to arrest defendant, and any subsequent deprivation of his liberty was based on probable cause and was therefore constitutionally valid; and the fact that defendant was not actually served with the warrant before being deprived of his liberty did not affect the constitutionality of any arrest based on probable cause.

**2. Criminal Law § 26.8— deadlocked juries in former trials—third trial not double jeopardy**

Defendant was not placed in double jeopardy by his third trial for the same offense after two prior trials ended when the jury was unable to reach a verdict and the trial judge declared a mistrial, since there was no indication of harassment by the State or bad faith conduct by the trial judges in defendant's two previous trials; the juries in the prior trials were genuinely deadlocked and the trial judges afforded them every reasonable opportunity to reach a verdict; and there was no evidence that the trial judges acted too quickly in declaring a mistrial in order to provide the State with a more favorable opportunity to convict defendant.

**3. Burglary and Unlawful Breakings § 5— first-degree murder—felonious intent—sufficiency of evidence**

The State presented sufficient circumstantial evidence of defendant's intent to commit a felony at the time of the breaking and entering to withstand defendant's motion to dismiss where the evidence tended to show that defendant was observed near the crime scene several hours before the breaking and entering occurred; he broke into the dwelling by cutting the screen in the screen door and breaking a pane of glass in the main door; and defendant in fact killed the occupant of the house and took several items therefrom.

**4. Homicide § 26— second degree murder—instructions not prejudicial**

    The trial court's error in defining second degree murder as "the unlawful and intentional killing of a human being with malice but with premeditation and deliberation" was not prejudicial to defendant, since the error was not brought to the court's attention at the time it was made, and any effect of this *lapsus linguae* was cured by the court's subsequent instruction that, if the jury found beyond a reasonable doubt that defendant intentionally and with malice struck the decedent with a poker type instrument which was then being used as a deadly weapon, then the jury's duty would be to return a verdict of guilty of second degree murder.

**5. Homicide § 24.1— presumptions arising from use of deadly weapon—instructions proper**

    In a first degree murder prosecution the trial court's instructions on the presumption arising from the proof of a killing by the intentional use of a deadly weapon did not relieve the State of its burden to prove each element of the offense charged beyond a reasonable doubt.

DEFENDANT appeals from judgment of *Lee, J.,* entered at the 26 May 1980 Criminal Session of Superior Court, CUMBERLAND County.

Defendant was tried upon indictments, proper in form, charging him with first degree murder, first degree burglary, and armed robbery. The jury found defendant guilty of first degree murder, first degree burglary, and felonious larceny. The trial judge ruled that the first degree burglary merged with the first degree murder for judgment and imposed one life imprisonment sentence for both offenses. Defendant was sentenced to a prison term of ten years, to commence at the expiration of the life sentence, for felonious larceny. We allowed defendant's motion to bypass the Court of Appeals on the felonious larceny charge on 17 December 1980. Defendant appeals from the trial court's judgment sentencing him to life imprisonment as a matter of right pursuant to G.S. 7A-27(a).

The State's evidence tended to show that at approximately 6:00 p.m. on 20 March 1976 Albert B. Richardson went to the home of his seventy-six year old step-father, Willie A. Kinlaw, at 126 Wade Street in Fayetteville, North Carolina, for the purpose of bringing him his evening meal. Mr. Richardson testified that as he was leaving the house about an hour later, he observed defendant walking down the street in front of his step-father's home.

State v. Simpson

On the following Sunday morning, 21 March 1976, Willie A. Kinlaw's body was found in the living room of his dwelling. The cause of death was determined to be brain damage and hemorrhage within the brain caused by two penetrating wounds on either side of the head inflicted by a hard object with an "L" or "V" shaped surface. The front screen door of Mr. Kinlaw's home had been cut or torn, and a window pane in the front wooden door had been broken. The back door was found ajar. An inventory of the house disclosed that the bedroom had been ransacked and a clock-radio and a .32 caliber revolver had been taken.

Shortly after Mr. Kinlaw's death his step-daughter, who was taking care of the deceased's bills, received a telephone bill for the phone at deceased's residence which reflected that a long distance call had been placed at 8:02 a.m. on 21 March 1976 from Mr. Kinlaw's telephone number to a number in Philadelphia, Pennsylvania. She reported this information to the Fayetteville Police Department.

Upon investigation by the Philadelphia police authorities it was determined that the Philadelphia phone number listed on Mr. Kinlaw's bill was assigned to the residence of Ms. Millie Smith. On 9 April 1976 Philadelphia police officers went to the Smith residence and interviewed Ms. Smith and defendant, who was present in the house at the time. Ms. Smith's daughter, Mary Melton, was then defendant's "girlfriend." Defendant informed the officers that he had been in Fayetteville, North Carolina, from approximately 15 March 1976 to 6 April 1976. He stated that he was then living at the Wyneva Hotel in Philadelphia, near Ms. Smith's residence. The Philadelphia officers returned to Ms. Smith's home on 12 April 1976 and were informed by Ms. Smith that defendant and Mary Melton were at the Wyneva Hotel at that time. The officers found defendant at the hotel and took defendant, Ms. Smith, and Mary Melton to the Police Administration Building for questioning. Ms. Smith testified at trial that defendant called her home before 8:30 a.m. on a Saturday or Sunday morning in March, 1976, and asked to speak to Mary Melton.

Upon his arrival at the Police Administration Building in Philadelphia, defendant was interviewed by Fayetteville and Philadelphia police officers and signed an exculpatory statement. The officers continued to question defendant, and at approximate-

ly 8:30 p.m. on that evening Detective Dupe of the Fayetteville Police Department entered the interrogation room and informed defendant that he had a warrant for his arrest. Detective Daniel Rosenstein of the Philadelphia Police Department and North Carolina State Bureau of Investigation Agent David Van Parker testified that defendant then made an oral statement confessing that he broke into Mr. Kinlaw's house during the early morning hours of 21 March 1976 and fell asleep on the floor. He awoke sometime later and observed Mr. Kinlaw walking toward him. Defendant then struck Mr. Kinlaw several times on the head with a wood and metal poker, took a radio, a .32 caliber revolver, and about $20.00 from the house, made a phone call from Mr. Kinlaw's telephone to Mary Melton in Philadelphia, and left the scene. Defendant's oral statement was prepared in typewritten form and read to him. He stated that the statement was correct to the best of his knowledge, but he refused to sign it.

Defendant presented no evidence at trial.

Additional facts relevant to the decision will be set forth in the opinion below.

*Assistant Public Defenders John G. Britt, Jr. and Orlando F. Hudson, Jr. for defendant.*

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Acie L. Ward for the State.*

COPELAND, Justice.

Defendant argues five assignments of error on appeal. We have carefully reviewed each assignment and find that the trial court committed no error which would entitle defendant to a new trial.

[1] Defendant first argues that the trial court erred in denying his motion to suppress his inculpatory statement made to law enforcement officers on 12 April 1976 at the Police Administration Building in Philadelphia. He contends that when law enforcement officers requested that he accompany them to the Police Administration Building, he was "arrested" without a warrant and without probable cause, in violation of his Fourth Amendment right not to be unreasonably seized. He further submits that any

statements he made subsequent to this "arrest" are the fruits of and tainted by the illegal arrest, and therefore inadmissible under the holdings of *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed. 2d 416 (1975) and *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed. 2d 824 (1979).

The trial judge held a *voir dire* on defendant's motion to suppress, after which he entered the following conclusions of law:

"The Court concludes that the defendant intelligently, intentionally and voluntarily accompanied police officers from his hotel room to the Police Administration Building in Philadelphia on April 12, 1976, for the purpose of talking with them and answering their questions concerning any knowledge that he had of or arising out of the aforementioned Kinlaw killing on March 21, 1976 . . .

That the defendant was fully advised of, understood and intentionally and intelligently waived his constitutional right to remain silent and to legal counsel and talked with and answered questions put to him by Philadelphia and North Carolina law enforcement officers concerning the aforementioned . . . homicide; and that any and all statements made by defendant to said law enforcement officers were freely, voluntarily, understandingly and intentionally made and that no threat of physical or mental violence of any nature or promise or assurance of reward of any nature was made to the defendant by said law enforcement officers as an inducement to the defendant to make statements and furnish information to them;

That the defendant was not restrained of his liberties by law enforcement officers until the aforementioned Philadelphia fugitive warrant was served on him, but that he probably would not have been permitted to leave the Police Administration Building after Fayetteville Police Officer Dupe entered the room where he was with a warrant for defendant's arrest which had been issued by North Carolina authorities.

IT IS, THEREFORE, ORDERED that defendant's aforesaid motion to suppress evidence of statements made by the defendant to law enforcement officers at the Police Ad-

ministration Building in Philadelphia, Pennsylvania, on April 12 and 13, 1976, be and the same is denied."

Since we find the trial judge's conclusions supported by competent evidence presented at the *voir dire* hearing, those conclusions are binding on this Court on appeal and defendant's assignment of error must be overruled. *State v. Whitt,* 299 N.C. 393, 261 S.E. 2d 914 (1980); *State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976). The evidence presented indicated that as part of an investigation into the homicide of Willie Kinlaw, Philadelphia Police Detective Daniel Rosenstein went to the Wyneva Hotel in Philadelphia on the morning of 12 April 1976 to locate defendant for questioning. Upon finding defendant at the hotel the officers requested that he come to the Police Administration Building to answer questions concerning the Fayetteville murder. Defendant agreed to accompany the officers and was driven to the Police Administration Building in a police vehicle, arriving at approximately 9:15 a.m. He was taken to an interrogation room and left alone until 9:30 a.m., at which time Detective Rosenstein advised him of his constitutional *Miranda* rights. Several officers testified that defendant was not locked in the interrogation room or deprived of his liberty in any way at this time; he was free to leave upon request. Defendant was again informed of his constitutional rights at about 10:10 a.m., after which he was interviewed by Detective Rosenstein and two officers of the Fayetteville Police Department until 11:25 a.m. At that time, defendant requested and was allowed to use the bathroom, and was subsequently questioned until 1:25 p.m. Defendant was then offered food, which he refused, and was questioned until 2:45 p.m. During these interviews defendant continued to deny any participation in or knowledge of the murder of Willie Kinlaw. He was not handcuffed, arrested, or restrained of his liberties during this time. Defendant then accompanied officers to a cafeteria located within the building, returning to the interrogation room at about 3:10 p.m. He then signed a form consenting to a search of his hotel room, and signed a typewritten transcript of his exculpatory statements at approximately 5:15 p.m. The officers continued to interview defendant until 7:00 p.m., at which time defendant requested and was furnished drinking water.

At about 7:30 p.m., Officer Dupe of the Fayetteville Police Department entered the interrogation room and informed defend-

ant that he had a warrant for his arrest, which warrant had been issued in Fayetteville. No attempt was made to serve the warrant on defendant at that time. The officers resumed their interview of defendant, at which time he confessed to the murder of Mr. Kinlaw, and asked to speak to Ms. Smith before admitting the details. He was allowed to talk to Ms. Smith and Mary Melton, after which he admitted the murder of Mr. Kinlaw, the theft of a clock radio, a revolver, and $20.00, and the fact that he had phoned Mary Melton in Philadelphia from Mr. Kinlaw's residence on the morning of 21 March 1976. It was at this point that the door to the interrogation room was locked and defendant was deprived of his liberty for the first time. Defendant's confession was reduced to a typewritten form, which defendant refused to sign, although he did inform Officer Parker of the Fayetteville Police Department that he considered the transcript to be correct. Defendant was formally arrested pursuant to a warrant at 1:25 a.m. on 13 April 1976.

Defendant places much emphasis on the testimony of Detective Rosenstein at *voir dire* to the effect that defendant was in his "custody" at the time they left the hotel on the morning of 12 April 1976. It is defendant's contention that this testimony establishes that he was arrested at this time. This Court has held that in determining whether an arrest has occurred, the dispositive factor is not the label which is appended to the encounter between law enforcement officers and an individual, but whether the individual has actually been deprived of his freedom of action by a "seizure" within the meaning of the Fourth Amendment. One is not arrested until law enforcement officers significantly restrict his freedom of action. Where one is free to choose whether to continue the conversation with the officers, he has not been arrested. *State v. Morgan*, 299 N.C. 191, 261 S.E. 2d 827 (1980). An individual's voluntary agreement to accompany law enforcement officers to a place customarily used for interrogation does not constitute an arrest. *United States v. Brunson*, 549 F. 2d 348 (5th Cir.), *cert. denied*, 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed. 2d 107 (1977); *United States v. Bailey*, 447 F. 2d 735 (5th Cir. 1971); *Doran v. United States*, 421 F. 2d 865 (9th Cir. 1970); *State v. Morgan, supra.*

In the present case, there is competent evidence which indicates that defendant voluntarily agreed to accompany law en-

forcement officers to the Police Administration Building on the morning on 12 April 1976. The officers did not frisk or handcuff defendant at that time. Defendant was not subjected to any physical contact with the officers until after he had made an incriminating statement. During his interrogation the officers honored each of defendant's requests for food, water, or the use of the bathroom facilities. He was not treated as though he was incarcerated. Several officers testified that had defendant asked to leave before Officer Dupe informed them that he had a warrant for defendant's arrest, he would have been allowed to go as. he pleased. Thus, there is sufficient evidence in the record to support the trial judge's conclusion that defendant was not under arrest until Officer Dupe appeared with a warrant for his arrest, and defendant's contentions to the contrary are without merit.

When Officer Dupe appeared with a warrant for defendant's arrest, there was sufficient evidence before the law enforcement officers to constitute probable cause to arrest defendant, and any subsequent deprivation of his liberty was based on probable cause and therefore constitutionally valid. *State v. Eubanks,* 283 N.C. 556, 196 S.E. 2d 706 (1973); *State v. Streeter,* 283 N.C. 203, 195 S.E. 2d 502 (1973). The fact that defendant was not actually served with the warrant before being deprived of his liberties does not affect the constitutionality of any arrest based on probable cause. Since we have held that no illegal arrest occurred under the facts of this case, then the holdings of *Brown v. Illinois, supra,* and *Dunaway v. New York, supra,* are inapplicable and defendant's motion to suppress was properly denied.[1]

[2] Defendant next maintains that the trial court erred in denying his motion to dismiss on the ground of double jeopardy.

He contends that since he was previously tried twice for the same offense charged in the present case, both of which trials ended when the jury was unable to reach a verdict and the trial

---

1. We previously upheld the admissibility of defendant's inculpatory statement on a similar challenge in defendant's trial for a separate, unrelated offense which he admitted in the same confession as that involved in the case *sub judice. State v. Simpson,* 299 N.C. 335, 261 S.E. 2d 818 (1980). We have also held the statement admissible as a confession given freely and voluntarily with full knowledge and understanding of an accused's constitutional rights. *State v. Simpson,* 297 N.C. 399, 255 S.E. 2d 147 (1979).

judge declared a mistrial, then his third and present trial was an attempt by the State to try him three times for the same offense, in violation of his right under the Fifth Amendment of the United States Constitution not to be placed in double jeopardy, made applicable to the states through the Fourteenth Amendment. *See Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969).

Defendant admits that the United States Supreme Court has held that where a defendant is put on trial and the jury is unable to reach a verdict, it is not unconstitutional for the accused to be retried for the same offense. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The courts of this jurisdiction have also long held that an order of mistrial which is declared for a "manifest necessity" or to serve the "ends of public justice" will not ordinarly cause a subsequent conviction after retrial to be susceptible to a double jeopardy challenge. *State v. Shuler,* 293 N.C. 34, 235 S.E. 2d 226 (1977); *aff'd sub nom. Shuler v. Garrison,* 631 F. 2d 270 (4th Cir. 1980); *State v. Beal,* 199 N.C. 278, 154 S.E. 604 (1930). It is axiomatic that a jury's failure to reach a verdict due to a deadlock is a "manifest necessity" justifying the declaration of a mistrial. *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed. 2d 717 (1978); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed. 2d 100 (1963).

Defendant correctly notes that where a defendant is harassed by multiple retrials after several juries fail to reach a verdict, the double jeopardy clause can apply in extreme circumstances to prohibit further retrial for the same offense. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed. 2d 267 (1976); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 2d 425 (1973). Absent oppressive practices by the State, however, the public's interest in a final adjudication of guilt or innocence outweighs the defendant's right to be free from further judicial scrutiny after a mistrial is declared. *Arizona v. Washington, supra; Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *State v. Shuler, supra.* Each double jeopardy claim must be considered in light of the particular facts of the case; there is no specific limit to the number of times a defendant may be retried after a mistrial has been properly declared. *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed. 2d 901 (1961).

In the case *sub judice* there is no indication of harassment by the State or bad faith conduct by the trial judges in defendant's two previous trials. It appears that the juries in the prior trials were genuinely deadlocked and that the trial judges afforded them every reasonable opportunity to reach a verdict. There is no evidence that the trial judges acted too quickly in declaring a mistrial in order to provide the State with a more favorable opportunity to convict defendant. Consequently, the present case is one in which the defendant's right to be free from repeated trials is outweighed by the public's interest in the administration of justice, and we find defendant's double jeopardy challenge without merit and overruled.

By his next assignment of error defendant submits that the trial court erred in refusing to grant his motion to dismiss on the grounds that the evidence was insufficient to sustain his convictions of first degree murder, first degree burglary, and felonious larceny. In his brief defendant does not argue that the evidence was insufficient to support his first degree murder and felonious larceny convictions, therefore this portion of defendant's assignment is deemed abandoned. North Carolina Rules of Appellate Procedure, Rule 28(b)(3).

In ruling upon defendant's motion to dismiss, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Fletcher*, 301 N.C. 709, 272 S.E. 2d 859 (1981); *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980). The Court must determine as a question of law whether the State has offered substantial evidence against defendant of every essential element of the crime charged. "Substantial evidence" is defined as that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). The test of the sufficiency of evidence to withstand dismissal is the same whether the State's evidence is direct, circumstantial, or a combination of the two. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

[3] After considering the evidence in this case in the light most favorable to the State, we find that there was substantial evidence presented of defendant's guilt on each material element

of first degree burglary. The elements of burglary in the first degree are the breaking and entering, in the nighttime, into a dwelling house or a room used as a sleeping apartment, which is actually occupied at the time of the offense, with the intent to commit a felony therein. *State v. Wells,* 290 N.C. 485, 226 S.E. 2d 325 (1976); *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972). Defendant contends that the State failed to present substantial evidence of defendant's intent to commit a felony within Mr. Kinlaw's residence at the time of the breaking. We disagree. The only direct evidence of defendant's intent in entering the dwelling is contained in his 12 April 1976 confession to law enforcement officers, in which he stated that after entering the dwelling, he immediately went to sleep on the floor. We note that defendant never claimed that his intent in entering the dwelling was to find a place to sleep; he merely stated that he in fact went to sleep after entering. It is well established that in the absence of proof to the contrary, a reasonable inference of felonious intent may be drawn from the fact that an individual broke and entered the dwelling of another in the night. *State v. Sweezy,* 291 N.C. 366, 230 S.E. 2d 524 (1976); *State v. McBryde,* 97 N.C. 393, 1 S.E. 925 (1887). The average person recognizes that a man or woman does not usually enter the dwelling of another in the night, without his or her consent, with an innocent intent. The State's evidence in the case *sub judice* tended to show that defendant was observed near Mr. Kinlaw's residence several hours before the breaking and entering occurred, that he broke into the dwelling by cutting the screen in the screen door and breaking a pane of glass in the main door, and that he in fact killed Mr. Kinlaw and took several items from the house. We believe this evidence gives rise to more than a suspicion or conjecture of defendant's felonious intent. The State presented sufficient circumstantial evidence of defendant's intent to commit a felony at the time of the breaking and entering to withstand defendant's motion to dismiss, and we hold that the trial judge properly submitted the case to the jury.

[4] Defendant next contends that the trial court erred in defining second degree murder as "the unlawful and intentional killing of a human being with malice but with premeditation and deliberation." While we agree that the trial court's instruction was in error, we find the error nonprejudicial to defendant.

Second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Poole*, 298 N.C. 254, 258 S.E. 2d 339 (1979). By instructing the jury that second degree murder is a homicide committed *with* premeditation and deliberation rather than one committed *without* those elements, the trial court gave an erroneous instruction. However, a mere slip of the tongue by the trial judge in his charge to the jury which is not called to the court's attention at the time it is made will not constitute prejudicial error when it is apparent from the record that the jury was not misled thereby. *State v. Carelock*, 293 N.C. 577, 238 S.E. 2d 297 (1977); *State v. Sanders*, 280 N.C. 81, 185 S.E. 2d 158 (1971). In the case *sub judice* the error was not brought to the court's attention at the time it was made, and any effect of this *lapsae linguae* was cured by the court's subsequent instruction that if the jury found beyond a reasonable doubt that defendant intentionally and with malice struck the decedent with a poker type instrument which was then being used as a deadly weapon, then the jury's duty would be to return a verdict of guilty of second degree murder. There was no mention of premeditation and deliberation in this instruction. We therefore find the court's error nonprejudicial, and defendant's assignment of error is overruled.

[5] By his final assignment of error defendant challenges the constitutionality of the following portion of the trial judge's charge to the jury:

"If the State proves beyond a reasonable doubt that the defendant intentionally killed Willie A. Kinlaw with a deadly weapon or intentionally inflicted one or more wounds upon Willie A. Kinlaw with a deadly weapon that proximately caused his death the law implies, first, that the killing was unlawful and second that it was done with malice."

It is defendant's position that this instruction creates an impermissible presumption relieving the State of its burden to prove each element of the offense charged beyond a reasonable doubt and thereby denies him his constitutional right to due process of law. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975); *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970). We disagree.

Speaking for this Court in *State v. Hankerson*, 288 N.C. 632, 649, 220 S.E. 2d 575, 588 (1975), *rev'd on other grounds*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed. 2d 306 (1976), Justice Exum observed:

"The *Mullaney* ruling does not, however, preclude all use of our traditional presumptions of malice and unlawfulness. It precludes only utilizing them in such a way as to relieve the state of the burden of proof on these elements when the issue of their existence is raised by the evidence. The presumptions themselves, standing alone, are valid and, we believe, constitutional."

We reaffirmed this holding in light of several United States Supreme Court decisions rendered subsequent to *Hankerson* in *State v. White*, 300 N.C. 494, 268 S.E. 2d 481 (1980).[2]

In the case before us the presumption of an unlawful killing done with malice was not used in such a way that the State was relieved of its burden of proof. The effect of the presumption is to impose upon the defendant the burden of going forward with or producing some evidence of a lawful reason for the killing or an absence of malice; *i.e.*, that the killing was done in self-defense or in the heat of passion upon sudden provocation. The State is not required to prove malice and unlawfulness unless there is some evidence of their non-existence, but once such evidence is presented, the State must prove these elements beyond a reasonable doubt. The instruction given by the trial judge in this case complied with the principles set forth in *Hankerson* and *White* and defendant's allegations to the contrary are without merit.

Defendant presented no argument in support of his assignments of error numbered three, five, and seven, therefore these assignments are deemed abandoned. North Carolina Rules of Appellate Procedure, Rule 28(b)(3).

Defendant received a fair trial free from prejudicial error and we find

No error.

---

2. The United States Supreme Court decisions analyzed in *White* are *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed. 2d 39 (1979) and *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed. 2d 777 (1979).