STATE OF NORTH CAROLINA v. ROBERT DANIEL RHINEHART

No. 456A88

(Filed 5 April 1989)

1. Homicide § 18.1— murder—premeditation and deliberation—evidence sufficient

    There was sufficient evidence of premeditation and deliberation in a prosecution for first degree murder where defendant bought a gun and took the day off from work; defendant told his wife that he had some of her clothes with him in order to persuade his wife's boyfriend to drive into a nearby parking lot; although defendant had an ample opportunity to shoot the boyfriend at

the intersection, he waited until he could approach his victim on foot; defendant told his wife after the killing that he had intended the victim to die and that had he had another bullet, he would also have shot her; defendant told a law enforcement officer that he just couldn't take it any more because his wife had left him and the children; defendant had visited the victim's mobile home two days prior to the killing and was only persuaded to leave when the victim picked up a pistol; defendant stated that that visit would not be the last; defendant testified that the victim did nothing to provoke him on the day of the shooting; and, having twice shot the victim in the head, defendant ran alongside the car as it accelerated and shot the victim again when the car came to rest against an embankment.

**2. Criminal Law § 119— homicide—request for instructions on sudden provocation and heat of passion—pattern jury instructions given—no error**

The trial court did not err in a first degree murder prosecution by refusing to use defendant's proffered instructions on sudden provocation and heat of passion where the court instructed the jury according to the pattern jury instructions on adequate provocation and heat of passion.

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Burroughs, J.*, at the 24 May 1988 Session of Superior Court, HAYWOOD County, upon defendant's conviction by a jury of one count of first-degree murder. Heard in the Supreme Court 15 March 1989.

*Lacy H. Thornburg, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*John I. Jay for defendant-appellant.*

MEYER, Justice.

Defendant was indicted on one count of murder in the first degree for the shooting death of Michael Trantham, the man with whom defendant's wife had been staying for several days. The State did not seek the death penalty, but tried the case on a theory of premeditation and deliberation.

The State's evidence tended to show the following. Defendant's wife, Betty Rhinehart, met Michael Trantham while they were both working at a dairy farm. On 14 December 1987, she left her family and moved in with Trantham and his four children, who lived in a mobile home on the farm. Defendant visited the farm that night, apparently looking for Trantham, but upon refus-

ing to name the person for whom he was looking, defendant was asked to leave.

On 15 December 1987, defendant returned to the dairy farm and found Trantham. Accompanied by Trantham, defendant went to the mobile home in order to talk to his wife. After some conversation between defendant and Trantham, defendant's wife began to cry and locked herself into the bedroom. Defendant tried unsuccessfully to talk her into coming out. Trantham eventually picked up a pistol and told defendant to leave. Defendant agreed to do so, but stated that this visit would not be his last.

On 16 December 1987, defendant again visited Trantham's mobile home to pick up his post office key from his wife. Defendant told his wife that he was going to talk to a lawyer and that if she would sign some papers, he would leave her alone.

On 17 December 1987, defendant's wife went with Trantham to do some Christmas shopping. On the way into town, they stopped at an intersection. There, they saw defendant in his car. Defendant drove his car beside theirs, so that the two drivers' doors were side by side. Defendant told his wife that he had some of her clothes to give to her and asked Trantham to pull over. Defendant drove into a nearby parking lot, and Trantham parked his car so that the drivers' doors were again side by side. Defendant left his car, walked over to the Trantham car, put his arm inside the car and shot Trantham twice in the head. As Trantham's body fell over, the car accelerated. Defendant ran beside it until it came to rest on an embankment. Defendant put the gun inside the car and shot Trantham again. He then threw the gun against the car. Shortly after the shooting, defendant told his wife that if he had had another bullet, he would have shot her too. He stated that he had intended Trantham to die.

Defendant presented evidence which tended to show the following. Defendant was "all tore up" about his wife leaving him, although they had separated for a day or two on prior occasions. Defendant testified that on 17 December 1987, he bought the gun with which he shot Trantham. He took the day off work and "was just out riding around." When he saw his wife and Trantham at the intersection, defendant told them he had some of her clothes in order to get them to stop and meet with him. Defendant did not actually have any of his wife's clothes in his car.

Defendant testified that he did not see Trantham with a gun on the morning of the shooting. Trantham did not say a word to defendant, nor did he make any move towards him. Defendant further testified that he did not plan to shoot either his wife or Trantham.

Defendant was present when Deputy Sheriff Bobby Lamb and Lt. John Jordan arrived at the parking lot. He told Deputy Lamb, "Go ahead and arrest me. I done it." To Lt. Jordan, he said, "John, I just couldn't take it anymore. She left me and the kids." The officers observed that although defendant was nervous, he was also calm and quiet. Defendant made a statement at the Sheriff's office, in which he said that he "got out of [his] car and walked up to the window on the driver's side of Mike Trantham's car and fired four or five times."

The trial court instructed the jury on first-degree murder, second-degree murder and voluntary manslaughter. The jury convicted defendant of first-degree murder, for which the trial court imposed the mandatory sentence of life imprisonment.

[1] Defendant presents two questions for review. First, he argues that the trial court should have granted his motion to dismiss the charge of first-degree murder because no evidence of premeditation and deliberation was presented at trial. We disagree.

This Court has defined premeditation and deliberation as follows:

> Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. The phrase "cool state of blood" means that the defendant's anger or emotion must not have been such as to overcome his reason.

State v. Jackson, 317 N.C. 1, 23, 343 S.E. 2d 814, 827 (1986) (citations omitted), judgment vacated, 479 U.S. 1077, 94 L.Ed. 2d 133 (1987). Premeditation and deliberation must generally be proved

by circumstantial evidence. *State v. Gladden*, 315 N.C. 398, 340 S.E. 2d 673, *cert. denied*, 479 U.S. 871, 93 L.Ed. 2d 166 (1986). Factors which the jury may consider in determining whether a killing was carried out with premeditation and deliberation include

> (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*State v. Jackson*, 317 N.C. 1, 23, 343 S.E. 2d 814, 827.

Further, in ruling on a motion to dismiss in a case where the defendant has elected to introduce evidence, the trial court may consider any such evidence that is favorable to the State. *State v. Price*, 280 N.C. 154, 184 S.E. 2d 866 (1971). A defendant's motion to dismiss a charge should be denied whenever substantial evidence of every element of that charge has been introduced at trial. *State v. Forrest*, 321 N.C. 186, 362 S.E. 2d 252 (1987). " 'Substantial evidence' is that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Cox*, 303 N.C. 75, 87, 277 S.E. 2d 376, 384 (1981). In deciding whether the evidence is substantial, the trial court must evaluate it in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Simpson*, 303 N.C. 439, 279 S.E. 2d 542 (1981). The test of the sufficiency of the evidence to withstand dismissal is the same whether the State's evidence is direct, circumstantial, or a combination of the two. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

With these principles in mind, a review of the transcript compels the conclusion that substantial evidence of premeditation and deliberation was presented in this case. On 17 December 1987 defendant bought a gun and took the day off work. He told his wife that he had some of her clothes with him in order to persuade Trantham to drive into a nearby parking lot. Although, as defendant himself points out, he had ample opportunity to shoot Trantham at the intersection, he waited until he could approach

his victim on foot. These actions tend to demonstrate planning and intent. *State v. Gladden*, 315 N.C. 398, 340 S.E. 2d 673.

Defendant's statements after the killing are also indicative of premeditation and deliberation. He told his wife that he had intended Trantham to die and that had he had another bullet, he would also have shot her. Defendant told a law enforcement officer that he "just couldn't take it anymore," because his wife had left him and the children. This evidence tends to show that defendant thought beforehand about killing Trantham and did so intentionally and in a cool state of blood. *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814. Furthermore, defendant's testimony that he had visited Trantham's mobile home two days prior to the killing and was only persuaded to leave when Trantham picked up a pistol shows that ill-will existed between them. There is also testimony that defendant stated that this visit would not be the last. Defendant himself testified that on 17 December 1987, Trantham did nothing to provoke him. Finally, the transcript shows that having twice shot Trantham in the head, defendant ran alongside the car as it accelerated and shot Trantham again when the car came to rest against the embankment. In short, the transcript reveals testimony in support of several factors which the jury could consider in determining whether the killing was done with premeditation and deliberation. *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814. Evaluating this evidence in the light most favorable to the State, *State v. Simpson*, 303 N.C. 439, 279 S.E. 2d 542, we conclude that substantial evidence of premeditation and deliberation was presented, *State v. Cox*, 303 N.C. 75, 277 S.E. 2d 376. The trial court did not err in denying defendant's motion to dismiss the charge of first-degree murder.

[2] Second, defendant argues that, with regard to the jury instructions on voluntary manslaughter, the trial court erred in refusing to use defendant's proposed instructions on "sudden provocation" and "heat of passion." This argument is without merit. The well-established rule is that when a request is made for a specific instruction " 'which is correct in itself and supported by evidence, the trial judge, while not required to parrot the instructions . . . must charge the jury in substantial conformity to the prayer.' " *State v. Davis*, 291 N.C. 1, 14, 229 S.E. 2d 285, 294 (1976) (quoting *State v. Bailey*, 254 N.C. 380, 386, 119 S.E. 2d 165, 170 (1961) ). Here, the trial judge instructed the jury on voluntary

manslaughter according to the pattern jury instructions on adequate provocation and heat of passion. N.C.P.I.—Crim. 206.10. Defendant has failed to show that these jury instructions were in any way deficient. This assignment of error is overruled.

In defendant's trial, we find

No error.